## JOHN MARSHALL AND ANOTHER v. EDWARD CLARK, SECRETARY OF STATE.

Under the statute authorizing the Governor to contract for the printing and binding of the Penal Code and Code of Criminal Procedure, it was manifestly intended to empower him to contract for the work where it could be done best, and upon the most favorable terms; and he was not bound to contract therefor with the public printer.

It was not the intention of the Legislature to have the Code printed by the public printer, with the general laws, but to except them out of the printing of the other acts of ordinary legislation, and have them printed in a separate and more durable form.

It was not a violation of the contract between the State and public printer, that the Legislature should authorize the Governor to contract for the printing of the Code with any other person than the public printer.

The constitution had provided that "within five years after the adoption of this constitution, the laws, civil and criminal, shall be revised, digested, arranged and *published*, in such manner as the Legislature shall direct, and a like revision, digest and publication, shall be made every ten years thereafter," (Gen'l Prov. Art. 7, Sec. 16.) The Codes constituted a part of the work contemplated by this provision of the constitution.

The statutes under which plaintiffs were elected public printers, did not contemplate the publication by them, in the manner they were required to print the laws, journals, &c., or in any other manner, the revised statutes thus provided for by the constitution.

These were not to be published under any general law enacted to provide for and regulate the printing of the matter of ordinary legislation, but by special enactment, "in such manner as the legislature shall direct."

The constitution was as much a part of the contract between the State and the public printer as any other law of the State; and it conferred upon the Legislature the authority to do what was done by the Act of 1st September, 1856, that is, to direct the manner in which the Codes should be published.

By referring to the constitutional provision, as confering authority upon the Legislature to provide for the publication of the Codes, otherwise than as provided for the other general laws, the court do not mean to be understood as admitting that such reference is necessary to sustain their authority.

If thought proper by the Legislature to have a particular act published in a different or more durable form than the other general laws, the court do not doubt their power so to provide by law, and to authorize the execution of the work in any manner, and by any person, they saw proper to employ, without any infraction of their contract with the public printer.

The State cannot be coerced into an observance of its contracts; and if the act complained of be a violation of the contract between the State and public printer, that would not authorize the maintenance of this action.

There is no authority of law for the bringing of such suit by proceeding by mandamus.

A mandamus will not lie against a public officer when it is, in effect, a suit against the State, or to compel a public officer to do an act not clearly defined and enjoined by law, much less the doing of one for which there is no authority of law.

APPEAL from Travis. Tried below before the Hon. Thomas H. Duval.

*Oldham* and *White*, for appellant. I. The first position which we assume in support of the application for a mandamus, is, that the election of public printers, by the legislature, and the execution of the bond and security required of the persons so elected, amount to a contract between the public printers and the State, binding upon both them and the State.

The laws providing for the election of the public printer, must determine the nature of his employment and the terms of his contract. The laws under which the relators were elected public printers prescribe first, in express terms, that they shall print the laws and journals, and, by implication the performance of other duties ; secondly, that they shall give a bond in the penal sum of five thousand dollars, conditioned for the performance of their duties; and thirdly, fix the price to be paid them for the work to be done by them.

II. Our next proposition is, that under the laws regulating the public printing, the two acts, establishing a Penal Code, and a Code of Criminal Procedure, are a part of the general laws, and should be printed as such by the public printers.

That they are general laws, or laws of a general nature, is self-evident. There is no necessity for attempting to prove that fact by argument.

That it would be the duty of the public printer to print them as a part of the general laws of the legislature, is equally clear, unless excepted by the third section of the Act of September 1st, 1856. Now, does the third section, by a fair construction, so except them ?

This section is totally silent in regard to the printing of the two Codes, as a part of the general laws, and if excepted from them, it is by implication. This implication is expressly repelled by the first section of the same act.

This section of the act requires the public printer to print all the general laws, and excepts no law from their duty. Had it been the intention of the legislature to exclude the Codes from amongst the general laws to be printed by the public printer, they certainly would, in a law relating to the printing of both the general laws and the Codes, have made the exception. As well might it be held, that whenever the legislature shall provide for the printing of any law in a separate form, it is thereby excluded from being printed among the laws to which it belongs. There is no rule of legal construction which will authorize the conclusion at which the Secretary has arrived.

There is another fact which seems to have been lost sight of by the Secretary of State. It is made his duty to superintend the printing of the laws by the public printer, and to give his certificate, that the laws as printed are true copies. The superintendence of printing the separate copies of the Codes, is given to another person, and no certificate of the Secretary is required to the work when so printed. His construction then dispenses with his official sanction as to the correctness of the most important laws of the State.

But even admitting, for the sake of argument, that the Codes are not to be printed amongst the general laws, still the Secretary is in default, for we contend in the third place—

III. That the public printers are entitled to print the five thousand copies of the Codes in a separate volume, as directed by the third section of the act of 1856.

This is clearly so, if, as is contended by the Secretary, they are not to be printed amongst the general laws; because, 1st, the relators were elected to print the laws; 2d, they gave bond to do it. This construction would be a violation of the contract entered into between the State and the relators.

But we contend that the public printers are entitled to the printing of the five thousand copies, according to the fair and reasonable construction of the act. The third section of the act of 1856, directs "the Governor to contract for and have printed on good paper, and bound in half leather binding," &c. Take all the laws together, and what is the Governor authorized to contract for, under this section? The legislature had elected persons to print the laws, and had required of them bond and security for the performance of their duties; the contract for the printing had already been made, that for "good paper and binding in half leather," had not been made. The Governor was therefore authorized to contract for the "good paper," and have the Codes printed upon it, and also to contract for "the binding in half leather." It is not to be presumed that the Legislature intended to legislate away from the public printers the work which they had been elected to perform, especially when it would violate a contract, and come in conflict with the constitution. This court will certainly not derive such a conclusion from mere implication.

Had the legislature expressly declared that the five thousand copies should be printed by the public printers, would they not have subjected themselves to a forfeiture of their bond if they had failed to do it? The contract should be mutual and binding upon both parties.

The question narrows itself down to this: the legislature having elected persons to do the public printing, and passed all the necessary laws prescribing their duties and compensation, and having ordered printing to be done, has either the Governor, or the Secretary of State, the authority to refuse to allow the persons so elected to do the work, and to give it to some other person, without express legislative permission;. granting the power in the legislature to give such permission?

*Attorney-General*, for appellee.

WHEELER, CH. J. This suit was instituted by the appellants

for a mandamus, to compel the Secretary of State to deliver to the plaintiffs, copies of the Penal Code and Code of Criminal Procedure, to be by them printed among the general laws of the Sixth Legislature.

The plaintiffs set forth in their petition, that they were elected public printers, by the Sixth Legislature, on the third day after the organization of the two houses; that they gave bond and security for the faithful performance of their duties as such public printers, and that they became thereby entitled to print all the laws of a general nature enacted by the legislature; that the Penal Code and Code of Criminal Procedure were enacted at the adjourned session of the legislature, after they had been elected public printers; they set out the substance of the 1st and 3d sections of the Act of September 1st, 1856, concerning the public printing; aver that the Penal Code and Code of Criminal Procedure, being general laws, they alone are entitled, by virtue of their election and qualification, to print them; and that by virtue of the recited Act of the 1st of September, 1856, the Governor is not authorized to contract for their publication with any one but themselves; that they are ready and willing to print the Codes among the general laws and in a separate volume; but that the Secretary of State refuses to deliver them copies thereof, as by law it is his duty to do; wherefore, they pray for a mandamus to compel their delivery. A demurrer to the petition was sustained, and the plaintiffs appealed.

It is unnecessary to review all the provisions of the statutes relating to the public printing. They provide for the election of a public printer, whose duty it shall be to print the laws and journals of the legislature, and certain other State papers, at certain fixed prices, and prescribe the manner in which the work shall be done. (See Hart. Dig. p. 825; Acts 3d Legislature, 1851, ch. 32, p. 23.) It will suffice to recite the provisions of the Act of the 1st of September, 1856, recited by the plaintiffs in their petition, under which they claim to be entitled to the printing of the Codes. They are as follows: "That the

"public printer be and he is hereby required to print, for the "use of the State, fifteen hundred copies of the general laws of "the State Legislature, in addition to the number now required "by law to be printed:" (2,500 was the number previously required,) and "That it shall be the duty of the Governor to con-"tract for and have printed on good paper, and bound in half "leather binding, five thousand copies, in one volume, of the "Penal Code and Code of Criminal Procedure; which, when "printed and delivered, shall be disposed of as is required in "the distribution of the general laws; and he may also, if neces-"sary, appoint a suitable and competent person to correct the "proof sheets, as issued from the press, and to make an index "thereto." (Acts 6th Legislature, adjourned session, (1856) p. 92.)

The grounds assumed by the appellants, are, that this act did not authorize the Governor to contract for the printing of the Codes with any person but themselves; and, moreover, that they are entitled to print the Codes, with the general laws enacted by the legislature.

It is difficult to perceive the force of the reasoning by which such a construction of the statute is sought to be maintained. The meaning of the legislature seems too plainly expressed to require a resort to construction, or to admit of doubt. Surely, it cannot be supposed the legislature intended so idle a thing as to empower the Governor to contract for the printing and binding of the Codes, and yet to limit him, in making the contract, to one contractor. That would be to defeat the very object for which they conferred the power. The Codes were to be printed and bound in a better and more durable manner than that in which the public printer was required to do his work; and hence it manifestly was intended to empower the Governor to contract for the work where it could be done in the best manner, and upon the best terms. This object would have been defeated by confining the Governor to one workman, with whom to make the contract. He must then have submitted to any terms which that person had seen proper to impose. Such, mani-

festly, was not the intention of the legislature. There is as little reason to suppose the legislature intended to have the Codes printed by the public printer, with the general laws, and also in a separate volume. The act requires the printing of fifteen hundred copies of the general laws, in addition to the number theretofore required, which was twenty-five hundred. Four thousand copies of the general laws, then, were to be printed; and they, at the same time, provide for printing five thousand copies of the Codes. Why publish four thousand copies of the Codes in one form, and five thousand in another? If nine thousand copies were wanted, it certainly would have been more economical and convenient to have them all printed in one form, though it had been the more durable one, in which the five thousand copies were required to be printed. But the Act provides that the five thousand copies "shall be disposed of as "required in the distribution of the general laws." They were to be distributed and sent by the Secretary of State to the several officers and persons entitled by law to receive the printed laws of the State. (Hart. Dig. Art. 2351, 2353, et seq.) Why furnish the same person two copies, one on common paper, "folded and stitched," the other on "good paper, and bound "in half leather binding?" Of what use would the copy thus printed with the other general laws be to a person provided with the bound copy? No such extravagance and folly was intended. Nor are we warranted by the statute in imputing such intention to the legislature. The intention plainly was, to except the Codes out of the printing of the other acts of ordinary legislation; and to have them printed in a separate and more durable form.

But it is insisted, that if such was the intention of the legislature, it was a violation of the contract between the State and the public printer; that the legislature had not the authority to contract for the printing of the Codes with any person other than the public printer. We do not assent to this proposition. The public printer was elected to print for the State the acts and general laws, which it was contemplated would be embraced

within the scope of ordinary legislation. The constitution had provided that "within five years after the adoption of this con-" stitution, the laws, civil and criminal, shall be revised, digested, " arranged, and published in such manner as the legislature " shall direct, and a like revision, digest, and publication, shall " be made every ten years thereafter." (Gen. Prov. Art. 7. Sec. 16.) The Codes constituted a part of the work contemplated by this provision of the constitution ; and the statutes under which the plaintiffs were elected public printers, did not contemplate the publication by them, in the manner in which they were required to print the laws, journals, messages, reports, &c., or in any other manner, the revised statutes thus provided for by the constitution. These were not to be published under any general law, enacted to provide for, or regulate the printing of the matter of ordinary legislation, but by special enactment, "in such manner as the legislature shall "direct." The constitution was certainly as much a part of the law of the contract between the State and the public printer as any other law of the State ; and it conferred on the legislature the authority to do precisely what was done by the Act of the first of September, 1856 ; that is, to direct the manner in which the Codes should be published. There was, therefore, no violation of the contract on the part of the legislature. As well might it be contended that the public printer would be entitled to print in pamphlet form, with the general mass of ordinary legislation, such a work as Hartley's Digest, or the new Digest to be compiled under the recent Act of the fifteenth of February, 1858, (Laws 7th Leg. (1858) ch. 157, p. 253,) which requires the publication of a like number of copies, to be distributed in like manner, as provided respecting the Codes, and contains other provisions analogous to those of the act providing for their publication. It will scarcely be contended that the public printer will be entitled to print this work with the other general laws ; or that the Governor could not lawfully contract with any one but him, for the "five thousand copies" of this "new and revised Digest," to be "printed upon paper

"of a quality not inferior to that of Hartley's Digest," and to be "put up in law sheep binding of the same character." Such a pretension would be deemed too extravagant to be seriously entertained; but it is not perceived that it would be more so than would be the maintenance of the plaintiff's pretensions in this case.

By referring to the constitutional provision, as conferring authority upon the legislature to provide for the publication of the Codes, otherwise than as provided for the other general laws, we do not mean to be understood as admitting that such reference is necessary to sustain their authority; or that they would not have the power, without such a provision in the constitution. If, in any given case, it was thought proper by the legislature to have a particular act or acts published in a different or more durable form than the other general laws, we do not doubt their power so to provide by law, and to authorize the execution of the work in any manner, and by any person, they saw proper to employ, as most likely to execute it in a manner and upon terms which they approved, without any infraction of their contract with the public printer. It is not thought that the having chosen a public printer, and provided for the printing by him of the laws, journals, and other matter required to be printed in the ordinary form, would give him any such control over the action of the legislature, as the opposite supposition would imply.

But if the act complained of be a violation of the contract between the State and the public printer, and an act of bad faith on the part of the legislature, that would not authorize the maintenance of this action. The State cannot be coerced into an observance of its contracts. It cannot be sued except by its own consent, in a mode provided by law. There is no authority of law for the bringing of such suit, by proceeding by mandamus against the Secretary of State. And it is well settled, that a mandamus will not lie against a public officer, where it is, in effect, a suit against the State, (League v. De Young, 2 Tex. Rep. 497,) or to compel a public officer to do an act not clearly defined and enjoined by law, (3 Tex. Rep.

51, 88; 5 id. 471;) much less to compel the doing of an act for which there is no authority of law: (9 Tex. Rep. 81.)

There is no error in the judgment, and it is affirmed.

Judgment affirmed.