B. F. HAMPTON AND CHARLES D. DENNIS, *Appellants,* v. STATE BOARD OF EDUCATION OF FLORIDA, A CORPORATION, AND CARY A. HARDEE, W. S. CAWTHON, RIVERS H. BUFORD, H. CLAY CRAWFORD AND J. C. LUNING, AS MEMBERS OF THE STATE BOARD OF EDUCATION OF FLORIDA, *Appellees.*

## En Banc.

## Opinion Filed June 27, 1925.

1. A State cannot be sued without its consent, and a suit against State officers may be in effect a suit against the State which cannot be maintained unless permitted by statute pursuant to Section 22, Article III of the Constitution.

2. The immunity of a State from suit is absolute and unqualified, and the constitutional provision securing it is not to be so construed as to place the State within the reach of the process of the Court.

3. Suits against officers of a State as representing the State in action and liability, where the State, although not a party to the record, is the real party against which relief is sought, and where a judgment for the plaintiff, although nominally against the defendant as an individual, could operate to control the action of the State or subject it to liability, are suits against the State.

4. The rule which forbids a suit against State officers because in effect a suit against the State applies only where the interest of the State is through some contract or property right, and it is not enough that the State should have a mere interest in the vindication of its laws, or in their enforcement as affecting the public at large or the rights of individuals or corporations; it must be an interest of value in a material sense to the State as a distinct entirety.

5. A suit against State officers for the purpose of enforcing through them the performance of the contracts of the State, or to compel them to do acts which would impose contractual liabilities upon the State, is a suit against the State.

6. Where a suit involves a contract or property right of the State with reference to property owned and held by the State, the suit is in legal effect a suit against the State, though it be brought against officers, and it cannot be maintained in so far as it affects property rights of the State, or seeks to enforce a contract made by or for the State, unless the consent of the State be duly given.

7. There is no statute authorizing the State to be sued to enforce contracts for the sale of State School lands; and the statutory authority to "fix the terms of sale," etc., of such lands, does not by implication authorize a suit to enforce a contract for the sale of State School lands; and the statute does not require any particular or general act or contract to be performed by the State officers who are authorized to sell State School lands.

An Appeal from the Circuit Court for Dade County; H. F. Atkinson, Judge.

Affirmed.

*Hampton & Hampton,* for Appellants;

*Rivers Buford,* Attorney General, *Hudson & Cason* and *J. B. Johnson,* for Appellees.

*Charles R. Pierce,* as Amicus Curiæ.

## STATEMENT.

The Constitution contains the following:

Section 3. The Governor, Secretary of State, Attorney-General, State Treasurer and State Superintendent of Public Instruction shall constitute a body corporate, to be known as the State Board of 'Education of Florida, of which the Governor shall be president, and the Superintendent of Public Instruction secretary. This board shall have * * * the management and investment of all State school funds under such regulations as may be prescribed by law * * *.

Section 4. The State School Fund, the interest of which shall be exclusively applied to the support and maintenance of public free schools, shall be derived from the following sources:

"The proceeds of all lands that have been or may hereafter be granted to the State by the United States for public school purposes.

"Donations to the State when the purpose is not specified.

"Appropriations by the State.

"The proceeds of escheated property or forfeitures.

"Twenty-five per cent of the sales of public lands which are now or may hereafter be owned by the State.

"Section 5. The principal of the State School Fund shall remain sacred and inviolate." Secs. 3, 4, 5, Art. XII, Const.

The statutes provide:

"The State Board of Education shall consist of the Governor, the Secretary of State, the Attorney General, the State Treasurer and the State Superintendent of Public Instruction. * * * Said board is a body corporate with full power to perform all corporate acts for educational purposes.

"The State Board of Education are directed and empowered:

"First.—To obtain possession of and take charge, over-sight and management of all lands granted to or held by the State for educational purposes, and to fix the terms of sale, rental or use of such lands, and to do whatever may be necessary to preserve them from trespass or injury, and for their improvement." Secs. 601, 602, par. 1, Rev. Gen. Stats. 1920.

"Credit shall not be allowed for the purchase money on the sale of any of the school or seminary lands of this State, but every purchaser of such lands shall, at the time of purchase, make complete payment therefor." Sec. 603, Rev. Gen. Stats. 1920.

These statutes were in force when the contract herein was entered into.

An Act of Congress approved March 3, 1845, is as follows:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress Assembled.* That in consideration of the concessions made by the State of Florida in respect to the public lands, there be granted to the State eight entire sections of land for the purpose of fixing their seat of Government; also, section number sixteen in every township, or other lands equivalent thereto, for the use of the inhabitants of such township, for the support of public schools; also, two entire townships of land, in addition to the two townships already reserved, for the use of two seminaries of learning, one to be located east, and the other west of the Suwannee river; also, five per centum of the net proceeds of the sale of lands within said State, which shall be hereafter sold by Congress, after deducting all expenses incident to the same; and which said net proceeds shall be applied by said State for the purposes of education." 1 Minutes I. I. Fund, 1855 to 1872, p. VII.

"On February 26, 1859 (11 Stat. at Large, pg. 385) the Congress of the United States enacted a law of a general nature, which applies alike to all the public land States

having School Grants of Sections 16 or 36, including Florida, who has a School Grant passed by Congress March 3, 1845, (5 Stat. at L. page 788) granting to her 'Section 16, of every Township, or other lands equivalent thereto,''—said Act of February 26, 1859, reads as follows:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress Assembled*, That where settlements with a view to pre-emption, have been made before the survey of the lands in the field which shall be found to have been made on sections 16 or 36, said sections shall be subject to the pre-emption claim of such settler; and if they, or either of them, shall have been, or shall be reserved or pledged for the use of schools or colleges in the State or Territory in which the lands lie, other lands of like quantity are hereby appropriated in lieu of such as may be patented by pre-emptors; and other lands are also hereby appropriated to compensate deficiencies for school purposes where said sections 16 or 36 are fractional in quantity, or where one or both are wanting by reason of the township being fractional, or from any natural cause whatever; PROVIDED, That the lands by this section appropriated, shall be selected and appropriated in accordance with the principles of adjustment and the provisions of the Act of Congress of May 20th, eighteen hundred and twenty-six, entitled 'An Act to appropriate lands for the support of schools in certain townships and fractional townships not before provided for.' " See also U. S. Stats. at Large, Vol 42, p. 8571.

On April 20, 1893, the State Board of Education placed the following on its official minutes: ''On motion of W. N. Sheats all the School Indemnity lands due under the Act of Feb'y. 26th, A. D. 1859 and now due the State were ordered sold to Jas. M. Graham of Gainesville, according to the terms of a bid made by him Feb. 7th, last and recorded Feb'y. 14th of the same month in this book. Mr. B. F. Hampton was made State Agent for the selection of said

lands without compensation from the State.. Attorney General Lamar and Supt. W. N. Sheats were authorized to enter into a contract with Messrs. Graham and Hampton.''

. On April 25, 1893, the following contract was entered into:

"State of Florida, }
Leon County. }

This contract made and entered into this 25th day of April, A. D. 1893, by and between Henry L. Mitchell, Governor; William B. Lamar, Attorney General; Jno. L. Crawford, Secretary of State; Clarence B. Collins, State Treasurer; and William N. Sheats, Superintendent of Public Instruction, as officers and members of the State Board of Education of Florida, parties of the first part, and James M. Graham, by his attorneny in fact, Benjamin F. Hampton, party of the second part, Witnesseth:

''That the said parties of the first part hereby agree to sell to the said party of the second part, his heirs, administrators, executors and assigns, all the school indemnity lands now due and owing the State of Florida by the United States, under the Act of Congress of February 26th, 1859, including all lands now selected under said Act and not yet approved by the Department of the Interior, at One Dollar and twenty-five cents ($1.25) per acre, and to make to him or such persons as he may designate, deeds thereto, upon the payment of said sum of $1.25 per acre.

''It is expressly understood that the said James M. Graham hereby agrees and obligates himself to purchase at the price named, all the lands found to be due and owing to the State, under the said Act of Congress of February 26th, 1859, when the same have been approved, and in order to indemnify the said Board against loss by his failure or refusal to carry out the conditions of this contract, the said Graham has deposited $1,500.00 with the State Treasurer.

which said amount, in event of his failure or refusal, as above set forth, he agrees shall be forfeited to the Board; otherwise, the same shall be accepted by the said Board in its final settlement with the said James M. Graham as a part of the purchase money mentioned herein.

"In witness whereof, we have hereunto set our hands and seals in the City of Tallahassee, Florida, this 25th day of April, A. D. 1893.

HENRY L. MITCHELL,
Governor.

JNO. L. CRAWFORD,
Secretary of State.

CLARENCE B. COLLINS,
State Treasurer.

(Seal—State
Board of Education)        W. B. LAMAR,

Attorney General.

W. N. SHEATS,
State Supt. Public Instruction.

JAMES M. GRAHAM,

By B. F. Hampton, Attorney in Fact."

On April 22, 1893, James M. Graham executed the following:

"Contract made with James M. Graham respecting Indemnity Lands.

State of Florida, )
Alachua County.  )

"Know all men by these presents, That I, James M. Graham, of Gainesville, said county and state, have made, constituted and appointed, and by these presents do make, constitute and appoint, Benjamin F. Hampton my true and lawful attorney for me and in my name, place and stead to contract with the State Board of Education of the State of Florida or such officers or members as may be designated by them, for the purchase of certain School In-

demnity script or lands, due the said State under the Act of Feb. 26, 1859, under the resolution passed by the said Board on Apr. 20th, A. D. 1893, giving and granting unto my said Attorney full power and authority to do and perform all and every Act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes, as I might or could do, if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said Attorney or his substitute shall lawfully do or cause to be done by virtue hereof.

"In witness whereof, I have hereunto set my hand and seal, in the City of Gainesville, Fla., this 22nd day of April, A. D. 1893.

JAS. M. GRAHAM.

Executed and delivered in the presence of W. L. Hill, E. S. Voyle."

On April 22, 1893, the following contract was executed:

"This agreement made and entered into this 22nd day of April, A. D. 1893, by and between James M. Graham and B. F. Hampton, both of Gainesville, Fla., witnesseth: That the said parties have entered into a contract for the purchase and sale of certain School Scrip and lands located therewith, from the State of Florida, in pursuance and by virtue of the following resolution, to-wit:

"Whereas, it has been ascertained that there is due the State of Florida about twelve thousand acres of land, as school indemnity, it is resolved that this Board authorize the sale of that portion thereof not yet approved by the Department, to any one bidder at $1.25 per acre, the bidder depositing $1,500.00 with the Treasurer of the State, securing the sale, and to be forfeited if the sale is not completed by him; purchaser to pay in addition to the said

$1,500.00, $1.25 per acre for any land conveyed to him, until the final settlement, which shall include such deposit.

"Now, therefore, it is agreed between said parties that said James M. Graham, in consideration of the services rendered and to be rendered by B. F. Hampton, and the information obtained from and through said Hampton, agrees and obligates himself to make the necessary deposit of $1,500.00 with the said Treasurer, and to supply and furnish all necessary funds for expenses or otherwise in the carrying out of this contract and of the contract with the State; and in consideration whereof the said B. F. Hampton shall do and perform all necessary work in preparing lists of location and attend to all matters in the Land Office pertaining to the same, and use his best endeavors in promoting our mutual interests; and the said James M. Graham shall first have and retain the $1,500.00 and other advances made by him out of the proceeds of the first sales of scrip or lands located therewith, without interest, and the overplus, either in lands, scrip or money from the sale of said School Scrip shall be paid equally—one-half to B. F. Hampton, and one-half thereof to James M. Graham; and should the said Graham desire and require any of the scrip in locating lands for his own use and purposes, then he shall, in addition to the amount paid to the State, pay to said B. F. Hampton a profit of fifty cents per acre for the same. And it is also hereby agreed that, should B. F. Hampton desire to locate with said scrip any lands for his own use and benefit, he shall pay to James M. Graham the sum of fifty cents per acre, profit, in addition to the price paid to the State, for each acre so used by him.

"It is also hereby agreed that, in event of the death of the said B. F. Hampton, or his disability on account of sickness or other cause, the provisions of this contract may be carried out by William W. Hampton, to whom shall be paid

all moneys or lands due the said B. F. Hampton on this contract.

"Witness our hands and seals this 22nd day of April, A, D. 1893.

> JAS. M. GRAHAM,
> B. F. HAMPTON."

Witnesses:

W. L. Hill,

E. E. Voyle.

Charles D. Dennis subsequently bought from Hampton an interest in the contract. Hampton acquired the rights of Graham.

WHITFIELD, J., (after stating the facts.)—In a suit brought against the State Board of Education, a corporation, and the State officers who compose the board, it appears that a contract was made by the Board with an individual respecting the sale of lands belonging to the State for school purposes.

The prayer is for the specific performance of the contract and for incidental and general relief.

A demurrer to the bill of complaint was sustained and the complainants appealed.

In support of the order appealed from, the appellees contend that the contract is unauthorized by law and should not be enforced by the court.

The appellees are State Officers and the subject matter of the suit is State property. The title to the property is not in the State Officers. They merely have statutory authority to sell the property.

This suit directly involves the property of the State. The State is the real party in interest, though the suit is nominally against State Officers in their official capacity as State officials. Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. Rep. 699; Hopkins v. Clemson Agricultural Col-

lege of South Carolina, 221 U. S. 636, 31 Sup. Ct. Rep. 654. If the contract sued on is valid, it is the contract of the State. Miller Supply Co. v. State Board of Control, 72 W. Va. 524, 78 S. E. Rep. 672.

This suit, being predicated directly upon a contract made by State officers representing the State, is in effect a suit against the State without its consent. McDowell v. Warden of Michigan Reformatory at Ionia, 167 Mich. 332, 135 N. W. Rep. 265; Love v. Filtch, 33 Okla. 131, 124 Pac. Rep. 30, 44 L. R. A. (N. S.) 212; Miller Supply Co. v. State Board of Control, 72 W. Va. 524, 78 S. E. Rep. 672; Bloxham v. Florida Cent. & P. R. Co., 35 Fla. 625, 17 South. Rep. 902, head-note 5. There is here no direction by law to perform the contract, and no legislative violation of the obligation of a contract. The State is not the actor. The principles announced in Kaufman v. Lee, 106 U. S. 196, 1 Sup. Ct. Rep. 240, and Tindal v. Wesley, 167 U. S. 204, 17 Sup. Ct. Rep. 770, or in Ex Parte Yong, 209 U. S. 123, 28 Sup. Ct. Rep. 441, and Trustees Int. Imp. Fund v. Bailey, 10 Fla. 112, text 132, are not applicable here. See Imperial Sugar Co. v. Cabell, (Tex. Civ. App.) 179 S. W. Rep. 83.

A State cannot be sued without its consent, and a suit against State officers may be in effect a suit against the State which cannot be maintained unless permitted by statute pursuant to Section 22, Article III of the Constitution. No such permission appears to have been given. Davis v. Gray, 16 Wall. (U. S.) 203, has been modified by subsequent decisions. In re McCabe, 123 U. S. 443, 8 Sup. Ct. Rep. 164; Minnesota v. Hitchcock, 185 U. S. 373, 22 Sup. Ct. Rep. 650; Ex parte New York, 256 U. S. 490, 41 Sup. Ct. Rep. 588; State of Louisiana v. Secretary of State, 234 U. S. 627, 34 Sup. Ct. Rep. 938; 24 Stand. Enc. Proc. 59.

"The immunity of a State from suit is absolute and unqualified, and the constitutional provision securing it is

not to be so construed as to place the State within the reach of the process of the court. Accordingly, suits against officers of a State as representing the State in action and liability, where the State, although not a party to the record, is the real party against which relief is sought, and where a judgment for the plaintiff, although nominally against the defendant as an individual, could operate to control the action of the State or subject it to liability, are suits against the State. The rule does not, however, afford immunity to an officer where the action is for relief against statutes. claimed to be unconstitutional; or where suit is instituted against him to compel performance of a duty required of him by statute.'' 25 R. C. L. pp. 413-414; and cases cited; 33 C. J. 397.

''The rule which forbids a suit against State officers because in effect a suit against the State applies only where the interest of the State is through some contract or property right, and it is not enough that the State should have a mere interest in the vindication of its laws, or in their enforcement as affecting the public at large or the rights of individuals or corporations; it must be an interest of value in a material sense to the State as a distinct entity. Thus, a suit against the Governor of a State, not by name but solely in his official character, is a suit against the State, so also is a suit against State officers for the purpose of enforcing through them the performance of the contracts of the State, or to compel them to do acts which would impose contractual liabilities upon the State.'' 36 Cyc. 916; Miller Supply Co. v. State Board of Control, *supra;* Pitcock v. State, 91 Ark. 527, 535, 121 S. W. Rep. 742; Wilkinson v. State, 42 Utah 383, 134 Pac. Rep. 626.

The immunity of the State from suit applies where a contract or property interest of the State is involved. Railroad Com'rs v. Pensacola & A. R. Co., 24 Fla. 417, 5 South. Rep.

129. See Louisville & N. R. Co. v. Railroad Com'rs., 63 Fla. 491, 58 South. Rep. 543, 44 L. R. A. (N. S.) 189 Notes; Sanders v. Saxton, 182 N. Y. 477, 75 N. E. Rep. 529, 108 Am. St. Rep. 826 and Notes; Atchison, T. & S. F. Ry Co. v. Armstrong, 71 Kan. 366, 80 Pac. Rep. 978, 1 L. R. A. (N. S.) 113, text 127; American Trust & Savings Bank v. Scobee, — N. M. —, 224 Pac. Rep. 788; Christian v. Atlantic & N. C. R. Co., 133 U. S. 233, 10 Sup. Ct. Rep. 260; Lankford v. Platte Iron Works Co., 235 U. S. 461, 35 Sup. Ct. Rep. 173, as to suits against State officers representing the State. This case is essentially different from Santa Fe Pac. R. Co. v. Fall, 259 U. S. 197, 42 Sup. Ct. Rep. 466; Payne v. Central Pac. R. Co., 255 U. S. 228, 41 Sup. Ct. Rep. 314; Garfield v. United States ex rel. Goldsby, 211 U. S. 249, 29 Sup. Ct. Rep. 62; Western Union Tel. Co. v. Andrews, 216 U. S. 165, 30 Sup. Ct. Rep. 286; Croom v. Pennington & Evans, 59 Fla. 473, 52 South. Rep. 957; Public Service Co. of Northern Illinois v. Corboy, 250 U. S. 153, 39 Sup. Ct. Rep. 440; Truax v. Raich, 239 U. S. 33, 36 Sup. Ct. Rep. 7; Tindal v. Wesley, 167 U. S. 204, 17 Sup. Ct. Rep. 770; Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. Rep. 903, 962; Trutsees Int. Imp. Fund v. Bailey, 10 Fla. 112, text 132.

By Chapter 610, Laws of Florida, approved January 6, 1855, Sections 1055 et seq., Revised General Statutes, 1920, superseding Chapter 332, Laws of Florida, approved January 24, 1851, the 500,000 acres of internal improvement lands granted to the State by Act of Congress of March 3, 1845, and the swamp and overflowed lands received by the State under the Act of Congress of September 28, 1850, were ''irrevocably vested in five trustees'' who are State officers ''and their successors in office, to hold the same

in trust for the uses and purposes" stated in the Act "with the power to sell" the lands and with directions for executing the trusts for which the lands were "irrevocably vested" in the trustees. Under such statutory provisions, suits against the trustee State officers, with reference to the execution of the trust including sales of the lands and the use of the proceeds for the trust, are not suits against the State. See Trustees I. I. Fund v. Bailey, 10 Fla. 112, text page 132. In such cases the suits are to require the due performance of duties prescribed by statute.

By Sections 602, 603 and 3798, Revised General Statutes, 1920, the State retains the title to all State School lands and merely authorizes the State Board of Education to take possession of, to manage, to preserve and to fix the terms of sale and to convey the title to "all lands granted to or held by the State for educational purposes." Under these statutes the title remains in the State and the State officers have no title, but a mere power of agency to sell the lands, not for trust purposes of an administrative nature, but such sales are for "the principal of the State School Fund" which "shall remain sacred and inviolate." Secs. 4 and 5, Art. XII, Constitution. In view of these organic and statutory provisions, a suit brought against the State officers to enforce a contract for the sale of State School land, is in effect a suit against the State, since it relates to land the title to which is in the State for the benefit of a "sacred and inviolate" school fund, and the State has not by statute directed the contract to be made, and has not by law authorized a suit against the State.

An action or suit brought against State officers in their official capacity is *not* a suit against a State that is forbidden by law unless express consent of the State is duly given (1) where the suit is to enjoin State officials from

enforcing an unconstitutional law, (*Ex parte* Young, 209 U. S. 123, 28 Sup. Ct. Rep. 441; Looney v. Crane Co. 245 U. S. 178, 38 Sup. Ct. Rep. 85; Coal & C. Ry. Co. v. Conley, 67 W. Va. 129, 67 S. E. Rep. 613), (2) to require the cancellation of a *void* tax sale certificate by an officer authorized by law to make the cancellation, (Croom v. Pennington & Evans, 59 Fla. 473, 52 South. Rep. 957; Gunter v. Atlantic C. L. R. Co., 200 U. S. 273, 26 Sup. Ct. Rep. 252.) See *contra*, Sanders v. Saxton, 182 N. Y. 477, 75 N. E. Rep. 529, 108 Am. St. Rep. 826, where there was no duty by law to cancel a tax deed held by the State, (3) to compel the performance of a duty required by statute, (Missouri Fund Com'rs v. Rolston, 120 U. S. 390, 7 Sup. Ct. Rep. 599; Croom v. Pennington & Evans, 59 Fla. 473, 52 South. Rep. 957. See also State *ex rel.* Weeks v. Gamble, 13 Fla. 9; Trustees I. I. Fund v. Bailey, 10 Fla. 112, text 132), (4) where the officer acts tortiously or without, or in excess of, or in violation of, authority given, (86 Fla. 393, Santa Fe Pac. R. Co. v. Fall, 259 U. S. 197, 42 Sup. Ct. Rep. 466; Hopkins v. Clemson Agricultural College of South Carolina, 221 U. S. 636, 31 Sup. Ct. Rep. 654; Louisville & N. R. Co. v. Railroad Com'rs, 63 Fla. 491, 58 South. Rep. 543), (5) where an officer *unlawfully* withholds property of another an action may be maintained against the officer but does not bind the sovereignty (Kaufman v. Lee, 106 U. S. 196, 1 Sup. Ct. Rep. 240); (6) where rights are conferred by statute and the officer violates or abuses his authority under the statute to the injury of rights conferred by the statute (Payne v. Central Pac. R. Co., 255 U. S. 228, 41 Sup. Ct. Rep. 314); (7) where the title to State property has been vested by statute in State officials as trustees with express duties to perform, suits with reference to such trust duties are not suits against the State, (Trustees of I. I. Fund v. Bailey, 10 Fla. 112, text 132.)   But where the

suit involves a contract or property right of the State with reference to property owned and held by the State, the suit is in legal effect a suit against the State, though it be brought against officers, and it cannot be maintained in so far as it affects property rights of the State, or seeks to enforce a contract made by or for the State, unless the consent of the State be duly given. McWhorter v. Pensacola & A. R. Co., 24 Fla. 417, 5 South. Rep. 129; Bloxham v. Florida Cent. & P. R. Co., 35 Fla. 625, 17 South. Rep. 902, Head Note 5; Louisville & N. R. Co. v. Burr, 63 Fla. 491, 58 South. Rep. 543, 44 L. R. A. (N. S.) 189, and Notes; Sanders v. Saxton, *supra,* and Notes; Hopkins v. Clemson Agricultural College of South Carolina, *supra;* 26 Am. & Eng. Encyc. Law (2nd ed.) 491; 24 Standard Ency. Proc., p. 61 *et seq.*

Section 22, Article III of the State Constitution provides as follows: "Provision may be made by general law for bringing suit against the State as to all liabilities now existing or hereafter originating." The Legislature is the proper body to authorize suits against the State. 26 Am. & Eng. Ency. Law (2nd ed.) 486; Bloxham v. Florida Cent. & P. R. Co., 35 Fla. 625, text 712, 17 South. Rep. 902.

There is no statute authorizing the State to be sued to enforce contracts for the sale of State School lands; and the statutory authority to "fix the terms of sale," &c., of such lands, does not by implication authorize a suit to enforce a contract for the sale of State School lands; and the statute does not require any particular or general act or contract to be performed by the State officers who are authorized to sell State School lands.

If the contract is valid, it relates to property of the State; and this suit is one against the State without its consent. Marshall v. Clark, 22 Texas 23; Miller Supply Co. v.

State Board of Control, 72 W. Va. 524, 78 S. E. Rep. 672; *In re* McCabe, 123 U. S. 443, 8 Sup. Ct. Rep. 164; Cunningham v. Macon & B. R. Co., 109 U. S. 446, 3 Sup. Ct. Rep. 292, 609; Hagood v. Southern, 117 U. S. 52, 6 Sup. Ct. Rep. 608; Smith v. Reeves, 178 U. S. 436, 20 Sup. Ct. Rep. 919; Ex Parte New York, 256 U. S. 490, 41 Sup. Ct. Rep. 588; Dispensary Commission of South Carolina v. Wilson Distilling Co., 213 U. S. 151, 29 Sup. Ct. Rep. 458; 26 Am. & Eng. Ency. Law (2nd ed.) 491. The State was not the actor in claiming a litigated fund, as in Clark v. Barnard, 108 U. S. 436, 2 Sup. Ct. Rep. 878. Nor were the defendant State officers authorized to represent and bind the State by waiver or otherwise in this case, as was held in Gunter v. Atlantic Coast Line R. Co., 200 U. S. 273, 26 Sup. Ct. Rep. 252. See Herring v. Houston Nat. Exch. Bank, 113 Texas 264, 253 S. W. Rep. 813. The Constitution controls. Sec. 22, Art. III. The appearance by demurrer does not bind the State. 184 N. W. Rep. 147.

The suit being in effect one against the State without its consent, the suit should be dismissed. Bloxham v. Florida Cent. & P. R. Co., 35 Fla. 625, 17 South. Rep. 902, Headnote 5. See Cunningham v. Macon & B. R. Co., 109 U. S. 446, text 457, 3 Sup. Ct. 292; Dispensary Commission of South Carolina v. Wilson Distilling Co., 213 U. S. 151, 29 Sup. Ct. Rep. 458; Hagood v. Southern, 117 U. S. 52, 6 Sup. Ct. Rep. 608; Western Union Tel. Co. v. Andrews, 154 Fed. Rep. 95; Farmers' Nat. Bank v. Jones, 105 Fed. Rep. 459; McDowell v. Warden of Michigan Reformatory at Ionia, 169 Mich. 332, 135 N. W. Rep. 265; State *ex rel.* Davis v. Mortenson, 69 Neb. 376, 95 N. W. Rep. 831, 5 Ann. Cas. 291; Peoples v. Byrd, 98 Ga. 688, 25 S. E. Rep. 677; Pitcock v. State, 91 Ark. 527, 121 S. W. Rep. 742; 201 Pac. Rep. 1058, 128 Atl. Rep. 137.

Affirmed.

WEST, C. J., AND ELLIS AND STRUM, J. J., concur.

TERRELL, J., disqualified.