WILLIAM F. HAMPTON, *et al.*, v. HUGH M. MATHESON, *et al.*

164 So. 714.
Opnion Filed November 27, 1935.
Rehearing Denied January 4, 1936.

*Hampton, Jordan* and *Lazonby,* and *Hampton, Bull & Crom,* for Appellants;

*F. M. Hudson* and *Hudson & Cason,* for Appellees.

PER CURIAM.—When Florida was admitted to the Union each sixteenth section of the public lands was granted to the State for school purposes. For the reason that many of these sections were short (contained less than the normal acreage) Congress on February 26, 1859, passed what was known as the "lieu land statute" authorizing the State to select unappropriated government lands in lieu of the deficiency in the short sections.

In April, 1893, the State Board of Education entered into a contract with James M. Graham of Gainesville, Florida, to sell him (Graham) all the school indemnity lands due and acquired by the State from the United States, under the Act of Congress of February 26, 1859, including the lands then selected though not approved by the Department of the Interior, at $1.25 per acre, and to make deeds to him or such persons as he may designate upon the payment of said amount.

The lands giving rise to this litigation are claimed under the foregoing contract which was assigned by Graham to B. F. Hampton and suit was heretofore prosecuted against the State Board of Education by Hampton to compel their conveyance to him, but that suit was disposed of on the question of jurisdiction, the court holding that it was a suit against the State and could not be maintained. See Hampton v. State Board of Education, 90 Fla. 88, 105 So. 323, where the contract is quoted in full and other facts pertaining to this suit are detailed.

Subsequent to the determination of the last named suit

the State Board of Education sold and conveyed said lands to William J. Matheson, the testator and predecessor in title of appellees. The instant suit was brought by the heirs and successors of B. F. Hampton, as complainants, against the heirs and successors of. William J. Matheson, as defendants, in an effort to declare the present holders of the legal title trustees for the complainants. To the bill of complaint the defendants, who are the appellees, filed an answer in which they incorporated a motion to strike. The latter was granted and complainants refusing to amend, the bill of complaint was on motion dismissed. This appeal is from the final decree dismissing the bill of complaint.

Under the facts as thus stated the first question presented appertains to the validity of the contract between the State Board of Education and James M. Graham.

Appellees contend that the contract with Graham was in violation of Section 388 of the Revised Statutes of Florida, Section 603, Revised General Statutes of 1920, then in effect, which provides in substance that credit shall not be allowed for the purchase money on the sale of any of the school or seminary lands of this State, but every purchaser of such lands shall, at the time of the purchase, make complete payment therefor.

This contention is without merit. The Graham contract contemplated a cash transaction at the price designated, so it was within the terms of the Act as above quoted if its effect is to place such transactions on a cash basis. It is true that deed to all the lands was not delivered at once, but after the "lieu land statute" was passed the lands covered by it, while being granted to the State *in presenti,* had to be selected and approved by the Department of the Interior before deeds were actually executed and the consideration passed. It was known at the time that the matter

of selecting and approving these lands, would be a tedious process, but the fact that it was did not make it any the less a cash transaction.

It is also proper to state that Section Three of Article Twelve of the Constitution creates the State Board of Education and vests it with designated powers. Sections 601 and 602, Revised General Statutes of 1920, Sections 754, 755, 756, and 757, Compiled General Laws of 1927, also enlarge on and define the powers of the State Board of Education, among which is the power to sell or otherwise dispose of the school lands. These provisions of the law in force at the time were ample to warrant the contract drawn in question. State, *ex rel.* Kittell, v. Trustees I. I. Fund, 47 Fla. 307, 35 So. 986.

The fact that the selection ran over a period of many years. is not material. There is no showing that the cash price was not paid as soon as selections were made, neither is it suggested that either party to the contract raised objection and neither of them is here complaining. It is not in the province of appellees or other third parties to complain. Thousands of acres have been selected and sold under the contract and we will not permit it to be disturbed at this time for the reasons contended.

The next and final question presented is whether or not the contract between the State Board of Education and Graham contemplated or included the lands involved in this litigation.

By the terms of the contract the State Board of Education agreed to sell "all the school indemnity lands now due and owing to the State of Florida by the United States, under the Act of Congress of February 26, 1859, including all lands now selected under said Act and not yet approved by the Department of the Interior."

The Act of February 25, 1859, on which complainants base their title, contains the following:

"And other lands of equal acreage are also here appropriated and granted, and may be selected by said State or Territory, where sections 16 or 36 are mineral land, or are included within any Indian, military, or other reservation, or are otherwise disposed of by the United States: * * * but such selections may not be made within the boundaries of said reservations: PROVIDED, HOWEVER, That nothing in this section contained shall prevent any State or Territory from awaiting the extinguishment of any such military, Indian, or other reservation and the restoration of the lands therein embraced to the public domain and then taking the sections 16 and 36 in place therein; but nothing in this proviso shall be construed as conferring any right not in this section existing prior to February 28, 1891:"

The Act of February 26, 1859, was a lieu indemnity Act and at the time it was enacted the lands in question were embraced in a government military reservation and could not have been embraced or contemplated by said Act. The said lands as a military reservation were later abandoned and were selected by B. F. Hampton as school indemnity lands, but could not be patented as such until Congress passed an Act approving the selection.

On September 20, 1922, through the activity of B. F. Hampton, Congress passed an Act confirming the selection. This Act is found in 42 U. S. St. L. 857, the pertinent part of which is as follows;

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the following Florida school indemnity land selection be, and the same is hereby validated and confirmed, notwithstanding its inclusion within an abandoned military

reservation, and the Secretary of the Interior is authorized to approve the same to the State of Florida, if the selection list is in all respects regular and accompanied by the necessary fees; Gainesville naught sixteen thousand six hundred and forty-nine, filed May 1, 1920, covering the southwest quarter of northwest quarter of section twenty-eight, in township fifty-four south of range forty-two east, Tampa meridian, Florida, forty acres."

The bill of complaint admits that before the State could acquire title to the lands in question as school indemnity lands it had to secure the passage of the Act of September 20, 1922, because the Federal law required that all lands in abandoned military reservations should be sold at public auction after survey, appraisal, and advertising. U. S. C. A., Title 43, Section 1072, page 318-319.

From a consideration of the foregoing it seems conclusive that when the contract between the State Board of Education and Graham was made it could not have had in contemplation the lands in question. The contract referred to lands then "due and owing to the State of Florida." The Act of February 26, 1859, on whch appellants rely, in terms excepted from its provisions lands in military reservations, the lands in question were not selected, and the Act approving them to the State for school purposes was not enacted for near thirty years after the contract was executed.

It cannot be questioned that the Act of September 20, 1922, was enacted through the activity of B. F. Hampton and the State Board of Education accepted the fruits of his industry, but there is no showing whatever that the terms of the contract of 1893 were ever extended to cover the lands affected by said Act and the facts presented conclusively

demonstrate that they were not included in the contract as originally made.

The intent of the parties as disclosed by the instrument and the facts affecting it are the primary guides to its interpretation, it should not be extended beyond its reasonable intent, and as with a deed it should not be construed to include lands not clearly shown to be within its terms. Under the facts as thus presented we see no theory under which the lands brought in question could have been affected by the Graham contract.

It follows that the judgment below must be and is hereby affirmed.

Affirmed.

WHITFIELD, C. J., and BROWN, J., and CAMPBELL, FRANK A. SMITH and LEWIS, Circuit Judges, concur.

BUFORD and DAVIS, J. J., disqualified.