Thomas R. Brown Executive Director Department of General Services Tallahassee
QUESTIONS:
1. Does the Executive Director of the Department of General Services, by exercising his authority to exempt a contractor of certain state building contracts from the requirement of posting a payment and performance bond, assume any personal liability, which otherwise would attach to a surety company, in the event the contractor so exempted fails to perform as required or fails to pay his suppliers, labor, or subcontractors?
2. Does the authority granted to the Executive Director of the Department of General Services to exempt certain contractors from the payment and performance bond requirement apply as well to situations in which the Department of General Services is not the contracting state agency and payment for the work done is to be made from funds not under the control of the Department of General Services?
SUMMARY:
The Executive Director of the Department of General Services, by exercising the discretionary authority vested in his office to exempt certain contractors of state public works projects from posting the otherwise required payment and performance bond, would not become liable as a surety in the event that the exempted contractor either fails to perform in accordance with the terms of the contract or fails to pay his subcontractors. The Executive Director of the Department of General Services alone is granted the authority to exempt certain contractors who are working on state public works projects, and this authority does not vest in any other officer when the project is not under the control of the Department of General Services.
Your inquiry necessarily involves an application of s. 255.05(1), F. S., which provides in pertinent part:
 Any person entering into a formal contract with the state or any county, city, or political subdivision thereof, or other public authority, for the construction of any public building, for the prosecution and completion of any public work, or for repairs upon any public building or public work shall be required, before commencing the work, to execute a payment and performance bond with a surety insurer authorized to do business in this state as surety. Such bond shall be conditioned that the contractor perform the contract in the time and manner prescribed in the contract and promptly make payments to all persons who are defined in s. 713.01 . . . . The claimant shall have a right of action against the contractor and surety for the amount due him. Such action shall not involve the public authority in any expense. However, at the discretion of the director of the Department of General Services when such work is done for the state, or at the discretion of the official or board awarding such contract when such work is done for any county, city, political subdivision, or public authority, any person entering into such a contract which is for $25,000 or less may be exempted from executing the payment and performance bond. (Emphasis supplied.)
By its terms, the statute in question requires every person who enters into a construction contract with the state, or with any other governmental entity which involves any public building or public work, to execute, before commencing work, a payment and performance bond with a surety company unless the contract amount is $25,000 or less, in which case specified officials are given the discretionary authority to exempt the contractor from posting the required bond.
AS TO QUESTION 1:
In your first question you inquire whether, in exercising the authority vested in your office by the Legislature, you might become liable as a surety if the contractor you have exempted from posting the otherwise required payment and performance bond either fails to perform in accordance with the provisions of the contract or fails to pay his materialmen and laborers. Your question is answered in the negative for the following reasons.
Under general principles of contract law, should the prime contractor fail to perform or fail to pay his materialmen or laborers, the injured parties would have, of course, a cause of action founded on contract against the defaulting contractor. Recognizing that such a remedy was often of no avail to materialmen and laborers who had contributed materials and services to such projects should the defaulting contractor be judgment proof, the law has long afforded such subcontractors a lien on the improved property to guarantee them a fund for payment, provided that the lien is timely filed. The rationale underlying the lien is grounded in equitable concepts of unjust enrichment as well as practical business considerations. To allow the property owner to be enriched at the expense of unpaid materialmen and laborers whose time and materials have contributed to the project would be inequitable; to require the prime contractor to establish his credit with every subcontractor with whom he deals would be impractical. Consequently, the law affords these essential parties a degree of security. See, generally, 51 Am. Jur.2d Liens ss. 20, 37.
Because of the doctrine of sovereign immunity, however, when the construction project involves publicly owned property, no liens are permitted. See, for example, the definition of `real property' contained in s. 713.01, F. S., the Florida Mechanic's Lien Law, which excepts publicly owned property. Since a lienholder may foreclose his lien and compel the sale of the property to satisfy the underlying debt, allowing a lien on public property would constitute an invasion of the state's sovereignty without its consent. See 30 Fla. Jur. State of Florida s. 58. As long ago as 1894, the Federal Government recognized that it had a moral obligation to provide some security for those whose labor and materials contribute to the construction of a public work. In that year Congress passed the Heard Act which required government contractors to post a security bond to stand in place of the security ordinarily afforded by a lien. 28 Stat. 278 (1894). In 1935, the Heard Act was replaced by the substantially similar Miller Act which, as amended, is still the law today. 49 Stat. 793
(1935); 40 U.S.C. ss. 270 a-d.
The Legislature, in 1915, passed a similar law to protect materialmen and laborers who work on public works projects in this state. Chapter 6867, 1915, Laws of Florida, required all persons entering into contracts for the construction or repair of any public works project to execute with a surety insurer a bond conditioned on the payment of all persons providing materials or service to the contractor. That law, as amended, is currently codified in s. 255.05, F. S. It has been recognized that the Florida law was patterned after the federal Miller Act and has for its purpose the protection of materialmen, laborers, and subcontractors who work on public works projects on which they are allowed no lien. See, e.g., Delduca v. U.S. Fidelity Guaranty Co., 357 F.2d 204 (5th Cir. 1966), reh. denied, 362 F.2d 1012, and Winchester v. State for Use and Benefit of Florida Electric Supply, Inc., 134 So.2d 826 (2 D.C.A. Fla., 1961).
A surety insurer is one who is bound with his principal for the payment of a sum of money or for the performance of a contractual obligation. He is an insurer of the debt or obligation and may be sued as a promisor. Generally speaking, the surety is bound only to the extent of his undertaking. The principal remains primarily liable while the surety is secondarily liable. However, in the absence of statutory or contractual language to the contrary, the creditor may choose to sue either party. In the event that the surety is compelled to discharge the obligation, he becomes a creditor of the principal and is entitled to be indemnified by the person who ought to have discharged it. See, generally, 30 Fla. Jur. Suretyship and Guaranty (1974).
In your first question, you have asked whether, by exempting a contractor from the bond requirement, you may be deemed to have assumed a duty to insure the debt or obligation of the principal contractor. In essence, you are asking whether you may be sued personally by a materialman or laborer if the prime contractor defaults in his payments to them. So long as you are acting within the limits of your statutorily prescribed duties, in good faith and not in an arbitrary or capricious fashion, you may not be sued individually but may only be sued as a representative of the state. See Hampton v. State Board of Education, 105 So. 323 (Fla. 1925), and 67 C.J.S. Officers and Public Employees s. 206. Since the suit is one against the state, the doctrine of sovereign immunity acts to prohibit it unless the state has consented to such a suit. As a general rule, a suit that involves a contract or property right of the state with reference to property owned and held by the state, even though brought against officers, is in legal effect a suit against the state, and it cannot be maintained insofar as it affects property rights of the state or seeks to enforce a contract made by or for the state, unless the consent of the state is duly given. See McWhorter v. Pensacola A.R. Co.,5 So. 129 (Fla. 1888), and Hampton v. State Board of Education,supra. Any statute purporting to waive sovereign immunity must be clear and unequivocal and is to be strictly construed. See
Department of Natural Resources v. the Circuit Court of the Twelfth Judicial Circuit, 317 So.2d 772 (2 D.C.A. Fla., 1975).
Turning now to the statute at hand, nowhere is there any indication that the Legislature intended to waive the state's sovereign immunity and subject itself to suit. The statute does not speak in terms of accepting any obligation to act as a surety for contractors when the bond is waived. In fact, the statute specifically states that a claimant may bring suit against thecontractor and surety, but that such an action shall not involvethe public authority in any expense. In view of the strict statutory construction to be given such laws, I can only conclude that the state has not consented to such a suit and, therefore, that such an action would not lie.
AS TO QUESTION 2:
In your second question, you inquire whether the authority granted you to exempt certain contractors from the required payment and performance bond applies to construction contracts entered into by other state agencies when the Department of General Services is not the contracting authority and when payment for the work is to be made from funds over which the Department of General Services has no control. The answer to your second question is in the affirmative.
The statute in question, s. 255.05(1), F. S., is clear on its face and affords no room for construction. By its terms, it provides that, when the work is done for the state and the contract amount is for $25,000 or less, the Executive Director of the Department of General Services alone may exempt the contractor from the otherwise required payment and performance bond. The only way that a contrary result could be reached would be to interpret the term `public authority' as used in the statute to include agencies of the state. I am of the opinion, however, that the Legislature did not intend such a result. This opinion is buttressed by the fact that the word `state' is used in its all-inclusive sense and the term `public authority' is placed in conjunction with counties, cities, and other political subdivisions. The obvious intent was that `public authority' be read to refer to authorities of local government created pursuant to general or special law and invested with some of the attributes of sovereignty ordinarily associated with local governmental bodies. Cf. Informal Opinion to Harmon Shields, Executive Director, Department of Natural Resources, issued July 21, 1978.
In conclusion, I am of the opinion that the Executive Director of the Department of General Services, by exercising the discretionary authority vested in his office to exempt certain contractors of state public works projects from posting the otherwise required payment and performance bond, would not become liable as a surety in the event that the exempted contractor either fails to perform in accordance with the terms of the contract or fails to pay his subcontractors. I am also of the opinion that the Executive Director of the Department of General Services alone is granted the authority to exempt certain contractors who are working on state public works projects and that this authority does not vest in any other officer when the project is not under the control of the Department of General Services.
Prepared by:
Percy W. Mallison, Jr. Assistant Attorney General