STATE, *ex rel.* FLORIDA DRY CLEANING & LAUNDRY BOARD, v. H. F. ATKINSON, *et al.*

188 So. 834.
Opinion Filed November 19, 1938.

McKay, Macfarlane, Jackson & Ramsey, Walsh, Beck-
ham & Ellis, Marks, Marks, Holt, Gray & Yates, George

*Couper Gibbs,* Attorney General and *Lawrence Truett,* Assistant Attorney General for Relator;

*E. F. P. Brigham* and *Whitfield & Whitfield,* for Respondents.

BUFORD, J.,—This is a prohibition proceeding, original here. Rule *nisi* issued to respondents, as follows: "This day this cause came on to be heard upon the Relator's petition for writ of prohibition, copy of said petition being hereto attached, and after having been considered by the Court, it is accordingly

"CONSIDERED, ORDERED, ADJUDGED and DECREED that the Respondents, H. F. Atkinson, as Judge of the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, Economy Cash & Carry Cleaners, Inc., Economy Cash & Carry Laundry, Inc. and French Benzol Cleaners, Inc., do show cause herein within ten days after the service of said writ why the prayer of the petition should not be granted."

The Petition alleged, *inter alia*:

"1. The Respondent, Economy Cash & Carry Cleaners, Inc., Economy Cash & Carry Laundry, Inc. and French Benzol Cleaners, Inc., have heretofore, on to-wit.: the 31st day of August, 1938, filed a bill of complaint in the Circuit Court of Dade County, Florida, in Chancery against your relator and others praying a temporary restraining order against relator, which said suit is entitled as follows, to-wit: Economy Cash & Carry Cleaners, Inc., Economy Cash & Carry Laundry, Inc. and French Benzol Cleaners, Inc., Plaintiffs, v. Florida Dry Cleaning & Laundry Board, a political body existing under Chapter 17894 of the Acts of the Florida Legislature for the year 1937, and W. R. Starling, W. M. Dale, I. G. Fonte, W. J. Hill, R. L. Daugherty, T. C. Nichols, T. M. Woodell as members of said Board,

and Hunter Johnson as Executive Secretary of said Board, Defendants, and is now pending and has been pending in said Court ever since the filing of said bill of complaint. That a true and correct copy of said bill of complaint, except exhibits thereto attached, is submitted herewith as Exhibit A and true and correct copies of the exhibits referred to in said bill of complaint, to-wit: orders number 1, 2, 5, 25 and 26, are likewise submitted herewith as Exhibits B. C. D. E. and F.

"2. That on to-wit, the said 31st day of August, 1938, one of the respondents herein, the Honorable H. F. Atkinson, as Judge of the Circuit Court in and for Dade County, Florida, signed and made an order temporarily enjoining your relator from enforcing against the plaintiffs in said bill of complaint named, any price fixing order promulgated or passed by the said Board and from instituting any action of any nature whatsoever against the said plaintiff therein named to compel the payment of any license taxes authorized by Chapter 17894 of the Laws of Florida, 1937. A certified copy of said order is submitted herewith and marked Exhibit G.

"3. That relator is an instrumentality of the State of Florida known as the Florida Dry Cleaning & Laundry Board, created by said Chapter 17894 of the laws of Florida, 1937, and that W. R. Starling, Chairman, T. C. Nichols, Secretary, T. M. Woodell, R. L. Daugherty, W. J. Hill, I. G. Fonte and W. M. Dale are now and have been at all of the times herein mentioned, the duly appointed, qualified and acting members of said Board and that said Board by said Act is given certain general powers, including the power to supervise and regulate the entire cleaning, dyeing and pressing industry in the State of Florida; to classify and establish different trade areas and provide different rules and regulations and charges therefor; to establish

health and sanitation requirements; to fix minimum and maximum prices, or either, for the rendering of service in separate trade areas in connection with the industry aforesaid, as will more fully appear from Section Four of said Act, reference to which is hereby specifically prayed.

"4. That in said Act it is provided by Section Thirteen thereof that whenever any order of the Board shall make reasonable provision for any person affected thereby to make application to the Board for a rehearing and a supersedeas from such order complained of, such person, firm or corporation, before applying to a court of chancery for relief in equity, 'shall first avail themselves of such right and opportunity to apply for such rehearing and supersedeas or make a sufficient, valid, legal showing on grounds cognizable in a court of equity for not having done so before being entitled to any other relief, provided nothing is herein intended to affect the several powers of any court of equity otherwise existing.'

"5. That in and by the orders of the Board referred to in the bill of complaint hereinabove mentioned, it was expressly provided as will appear from said orders that any person dissatisfied therewith might apply for rehearing and supersedeas, but the said respondents Economy Cash & Carry Cleaners, Inc., Economy Cash & Carry Laundry, Inc., and French Benzol Cleaners, Inc., have not, nor has any one of them or any one else at any time made application for rehearing as in said Act and said order provided or otherwise and that by reason thereof the said suit now pending in Dade County, Florida, is improperly and prematurely brought and the said court and the judges thereof, including the respondent the Honorable H. F. Atkinson, should not entertain said suit until a rehearing as provided is applied for, and that said respondents above mentioned have not

shown by said bill of complaint any valid, legal grounds cognizable in a court of equity for not having done so.

"6. That said board has always been and is now ready and willing to receive and consider any such petition for rehearing that may be filed and presented in accordance with said Act and with said orders hereinabove mentioned.

"7. That in and by Section Three of said Act, it is provided 'the principal office of said Board shall be in such City in Florida as the Board may establish as headquarters,' and it is further provided in and by Section Thirteen that any person aggrieved by any act of the Board taken under provisions of this Act which has resulted in the granting of a final order may file a bill of complaint in chancery 'in the circuit court of the circuit where the main headquarters of the Board is located, seeking to reverse, vacate or modify the said order complained of.'

"8. That the said Board has heretofore and prior to the institution of said suit in equity aforesaid and the making of the orders therein referred to, designated and established its principal office in Jacksonville, Florida, and that said principal office has always been in Jacksonville, Florida, and no place else, in the State of Florida and said principal office during all of said time has been and is the main headquarters of the Board so located in Jacksonville, Florida.

"9. That by reason thereof the Circuit Court of Dade County, Florida, is without jurisdiction to entertain a suit against the said Board and no court in the State of Florida can or could at any of the times herein mentioned have had jurisdiction of a suit against said Board except the Circuit Court of Duval County, Florida.

"10. That said respondent, the Honorable H. F. Atkinson, as Judge aforesaid, will continue to entertain said suit against this Board and proceed to consider the various mat-

ters and things therein presented and the said other respondents will continue to press said suit against this Honorable Board and its members unless prohibited by a writ from this Honorable Court."

The prayer of the bill of complaint attached to and made a part of the petition is:

"WHEREFORE, The premises considered, it is respectfully prayed:

"(a) That the defendants and each of them may be compelled to answer this bill of complaint, but not under oath, answer under oath being hereby expressly waived.

"(b) That this Honorable Court will temporarily enjoin, without notice, until the further order of the Court, the defendants or either of them, their agents, attorneys, officers, servants and employees from enforcing any price fixing order of the defendant Board against these plaintiffs, and from instituting any action of any nature whatsoever against these plaintiffs for the purpose of compelling them to abide by any price fixing order of the defendant board against these plaintiffs, and from enforcing or attempting to enforce against these plaintiffs any license taxes provided for these plaintiffs to pay by either the order of the defendant board or by Chapter 17,894 of the Acts of 1937 of the Florida Legislature.

"(c) That upon final hearing the injunction so made and rendered will be made permanent."

Demurrer has been interposed to the petition.

Section 3 of Chapter 17894, Acts of 1937, provides:

"Section . 3. CREATION OF BOARD.—There is hereby created a Board to be known as the Florida Dry Cleaning and Laundry Board to consist of seven members to be appointed by the Governor and be subject to removal by him for cause as in case of other appointive officers. Such

board shall consist of three members chosen from those residents of this State exclusively engaged in the dry cleaning, dyeing and pressing industry, and three members to be chosen from residents of this State engaged in the laundry business and one member as a resident of this State to represent the general public. In naming the members of such Board the Governor shall give due regard to allowing fair geographical representation throughout the State. Such members shall be appointed for four year terms, provided, that in order to insure rotation in office the first members named hereunder shall be appointed for the following terms of office: The member representing the public shall be appointed for one year, one member exclusively engaged in the cleaning industry and one member engaged in the laundry industry shall be appointed for two years, and two like members shall be appointed for three years, and two like members shall be appointed for four years, and as the terms of such members shall expire their successors shall each be appointed for a term of four years. Compensation of such Board members shall be $5.00 per day in attending meetings of the Board, with allowance of actual traveling and reasonable living expenses in connection therewith, which shall be allowed paid as any other expense of the Board. After being appointed and legally qualifying Board shall promptly meet and organize by choosing a chairman and secretary from its membership to serve at the pleasure of the Board and shall thereafter conduct its executive organization in a parliamentary manner. Such board shall thereafter select and employ a Chief Supervisor with adequate experience in the dry cleaning and laundry business who shall be the administrative executive of the board in the carrying out of the terms of this Act subject to the general supervision of said Board and to serve at the pleasure of said Board and with such salary, duties and powers

as such Board may delegate and provide. The Board shall likewise have authority to employ such other technical, legal and clerical assistants, as may be reasonably necessary for the proper administration of this Act, all to serve at the pleasure of said Board which shall prescribe their powers and duties and fix their compensation. Such Chief Supervisor subject to the limitations of this Act and the law shall assist in enforcing this Act, but no official order may be made and issued without the approval of the majority of the membership of such Board which shall constitute a quorum for the conduct of the Board's business. Provided, that between meetings of the Board such Chief Supervisor may be designed to perform such duties as the Board may prescribe in keeping with the terms of this Act. The principal office of the Board shall be in such City in Florida as the Board may establish as headquarters, but offices in other localities may also be established and maintained by the Board whenever the same may be deemed expedient and more convenient. On request of such Board it shall be the duty of the proper State officials to provide reasonable space for the use of such Board in the State Capitol."

The record shows that the Board has established its headquarters in the City of Jacksonville, Duval County, Florida.

Section 4 of the Legislative Act provides, in part:

"Section 4. General Powers.—The Board herein created is declared to be the instrumentality of the State for the purpose of attaining the ends recited in the legislative finding, and is hereby granted the following powers, to-wit:

"To supervise and regulate the entire cleaning, dyeing, pressing and laundry (including the rental of linen and laundry supply or similar service) industry of the State of Florida as herein defined; to require the prompt handling

and adjustment of claims; to hold hearings after reasonable notice thereof has been given; to receive sworn testimony and evidence at such hearings as to the reasonableness of any order, rule or regulation of the same; to reasonably classify and establish different trade areas and provide different rules, regulations and charges therefor; to establish health and sanitation requirements; to fix minimum and maximum prices or either for the rendering of services in separate trade areas in connection with the industry herein regulated; to establish reasonable rules and regulations of fair competition; to fix reasonable rules and regulations for the conduct of the Board's business and for the regulation of its employees;" * * *

The bill of complaint involved shows that:

"Eonomy Cash & Carry Cleaners, Inc., a corporation organized under the laws of the State of Florida, and having its principal place of business in Dade County, Florida, Economy Cash & Carry Laundry, Inc., a corporation organized under the laws of the State of Florida, having its principal place of business in Dade County, Florida, and French Benzol Cleaners, Inc., a corporation organzed under the laws of the State of Florida, and having its principal place of business in Dade County, Florida, bring this bill of complaint against Florida Dry Cleaning & Laundry Board, a political body existing under Chapter 17894, Acts of the Florida Legislature for the year 1937, W. R. Starling, a resident of Dade County, Florida, W. M. Dale, a resident of Alachua County, I. G. Fonte, a resident of Hillsborough County, W. J. Hill, a resident of Orange County, R. L. Daugherty, a resident of Dade County, T. C. Nichols, a resident of Duval County, T. M. Woodell, a resident of Duval County, as members of said Board, and Hunter Johnson, a resident of Duval County, as Executive Secretary of said Board, and alleges;" * * *

The purpose of the suit pending in the Circuit Court of Dade County as is seen from the allegations and prayer of the bill of complaint is to enjoin the Florida Dry Cleaning & Laundry Board from exercising the power of price-fixing and from requiring the payment of the license tax purporting to be authorized by the Legislative Act, *supra*. The existence of the Board as an instrumentality of the State of Florida is not challenged and indeed may only be challenged by *quo warranto* proceedings in the name of the Attorney General. The suit filed in Dade County is a suit against an instrumentality of the State.

The Florida Dry Cleaning & Laundry Board, being a State instrumentality created by the legislature to exercise sovereign powers, no suit may be maintained against it where the interest of the State in such suit is through some contract or property right, except by consent of the State, which consent may only be effectuated by legislative Act. Such consent can be extended to operate no further than the limitation, if any, which may be prescribed by the legislature in its grant of consent. With the widsom or policy of a legislative Act limiting the scope of the State's consent to be sued, the courts have no voice. Many authorities are found supporting these enunciations and we have found none nor have we been cited to any holding to the contrary.

The provisions, however, of Section 22, Article III of our Constitution, do not apply to suits in which the interest of the State is merely in the vindication of its laws or in their enforcement as affecting the public at large or the rights of individuals or corporations; to come within the constitutional inhibition there must be an interest of value in a material sense to the State as a distinct entity. Hampton v. State Board of Education, 90 Fla. 88, 105 Sou. 323; Southern Drainage District, *et al.*, v. State of Florida, *et al.*, 93 Fla. 672, 112 Sou. 561; State, *ex rel.* Davis, v. Love,

99 Fla. 333, 126 Sou. 374; Kennard v. State Tuberculosis Board, 129 Fla. 619, 176 Sou. 872.

So the question arises, "What is the force and effect of the provision of the Statute, viz.:

"Any person, firm or corporation deeming themselves aggrieved by any action of the Board taken under and of the provisions of this Act which has resulted in the granting of a final order by said Board, may, within thirty (30) days after receipt of a copy of the order of this Board, file a bill of complaint in Chancery in the Circuit Court of the Circuit where the main headquarters of the Board is located, seeking to reverse, vacate or modify the said order complained of, together with such other relief in equity as plaintiff might deem himself entitled to and such Court may thereafter proceed to hear and dispose of the same as in other proceedings in Chancery. All legal proceedings may proceed in the name of the Florida Dry Cleaning and Laundry Board as plaintiff, or defendant, and legal service of summons and other pleadings to bind the Board may be served upon the Chairman of the Board, or the Chief Supervisor, but in the event of their absence, upon any member of the Board, or by leaving a copy at the main office of the Board in the city where such main office may be located."

As we construe this language, it means that all suits instituted for the purpose of modifying or annulling orders of the Board made under the legislative grant of power are required by the terms of the Act to be instituted in the Circuit Court of the jurisdiction where the headquarters of the Board is located and established. Whether the provision of the statute providing that,

"The principal office of the Board shall be in such City in Florida as the Board may establish as headquarters but offices in other localities may also be established and maintained by the Board whenever the same may be deemed

expedient and more convenient," is a wise or salutary one is not for us to determine. The power to make such provision rests in the legislature and has been many times so exercised.

That the suit instituted in Dade County is one which seeks to vacate the orders complained of cannot be seriously questioned, but the bill of complaint seeks to vacate and annull the force and effect of the orders complained of on the ground that the Board was, and is, without authority to make and enforce such orders. If the contention of the complainants in that suit is well founded certainly they may contest the constitutionality of the Act without presenting that question to the Board for determination because the alleged unconstitutionality of the Act is a question which may only be determined by a court of competent jurisdiction and is not one which an administrative board charged with the performance of duties prescribed by the Act may assume to determine. State v. State Board of Equalizers, 84 Fla. 592, 94 Sou. 681; State v. Beville, 107 Fla. 57, 144 Sou. 331; State, *ex rel.* Ship Canal Authority v. Lancaster, 125 Fla. 464, 170 Sou. 126.

It, therefore, follows that for the litigating respondents to have applied to the Board for relief would have been a vain and useless thing, and, therefore, the provision of the statute, *supra,* requiring those who may be aggrieved by an order promulgated by the Board to apply to the Board before invoking the aid of the courts can not be held to apply to this class of cases.

It is seen by the quoted provisions of the Act that some of the governmental functions to be exercised by the Board are to be exercised at its headquarters in the city required to be designated by the Board as its headquarters. But its orders and rules legally promulgated may be enforced in the several counties of the State.

State, *ex rel.* Anderson, *et al.,* v. Parks, Circuit Judge, 94 Fla. 91, 113 Sou. 702, was a case where it was sought by mandamus proceedings in the Circuit Court of Hillsborough County to require the State of Law Examiners to conduct an examination in Hillsborough County, Florida, for certain purposes therein set forth. The Board of Law Examiners instituted a proceeding in this Court to prohibit the further maintaining of the mandamus proceeding. In that case it was made to appear that the official action of the Board must be had at Tallahassee, Florida, and in that case we held that the Circuit Court of Hillsborough County was without jurisdiction; that the suit could only be maintained in the Circuit Court of Leon County, and we said:

"While it is sometimes held in other States that a writ of prohibition will not issue unless the attention of the court whose proceedings it is sought to arrest has been called to the alleged lack or excess of jurisdiction and unless the exception so taken has been overruled, that requirement is not jurisdictional in the proceeding by prohibition, but is a rule of procedure only. 'In this State, however, the rule is settled that:

" 'Where the want or excess of jurisdiction relates to the subject matter and is apparent upon the face of the proceedings of an inferior court sought to be prohibited, and that court has made some order in the exercise of such un-authorized jurisdiction, prohibition will lie, even though no plea to the jurisdiction has been tendered to and ruled upon by the inferior court.' State v. White, 40 Fla. 297, 24 South. Rep. 160. See also State v. Whitney, 66 Fla. 24, 63 South, Rep. 299."

In State, *ex rel.* Claar, v. Branning, Judge etc., 85 Fla. 61, 95 Sou. 237, this Court, speaking through Mr. Justice WHITFIELD, said:

"The provisions of Section 3061, that the authority of

the Circuit Judge sent into a circuit by executive order shall not affect the jurisdiction of the resident Circuit Judge except so far as not to conflict with the authority of the assigned Judge as to the matters specified in the executive assignment, are designed to facilitate the business of the Circuit Court and to avoid conflicts of jurisdiction, which objects of the statute are consistent with the intent and purpose of the quoted organic provision of 1885 as amended in 1902 under which the statute was enacted.

"In the absence of an organic limitation, the intent of the law-making power as expressed in a duly enacted statute is the controlling law of the land, and the courts have no power to annull it, but should effectuate such lawmaking intent.

"Section 3061 Revised General Statutes, 1920, is not in conflict with amended Section 8, Art. V of the Constitution, and the resident Circuit Judge should give effect to the statute."

In State, *ex rel.* Patterson, v. Lee, 121 Fla. 541, 164 Sou. 188, it was held:

"When a legislative enactment involving official duties is held by the Circuit Court to be invalid because not legally enacted, and the same Act is afterwards in another suit held by the Supreme Court to have been legally enacted and valid, the Act is valid from its enactment, and the judgment of invalidity of the Act by the Circuit Court is inoperative against a mandate of the Supreme Court in the later case operating on the same parties with reference to the performance of their official duties under the statute. The suit in the Circuit Court was by a taxpayer to enjoin the officers from levying a tax to pay the bonds. This action is by bondholders to require the officers to levy the tax.

"To tax is to legalize and, the Supreme Court having held Chapter 17257, Acts of 1935, valid and constitutional,

it follows that it is the duty of the Comptroller to administer the provisions of the Act insofar as slot machines described in that Act are concerned or are involved, unless restrained by an order of a court of competent jurisdiction having jurisdiction of the Comptroller, although it may later be found that in the operation of some of such machines a lottery is being conducted, or that such machines are being operated in violation of law, which would warrant injunction being entered by a circuit court restraining such operation, as well as in other cases where it may be found and shown that the operation of one or more of those machines which have been licensed constitute a nuisance because of their location and manner of operation. But, in such cases the injunction must be applied to the particular machines and parties operating them and not to the Comptroller in the general administration of that which has been held to be a valid law of the State of Florida.

"The Comptroller performs his official duties in the administration of laws which he is required to administer in his office at the State Capitol in Tallahassee, Florida, and, therefore, a suit instituted to control or coerce the action of the comptroller in the performance of official administrative duties that are required to be performed at the Comptroller's office in the capitol must be instituted either in the Circuit Court of Leon County, Second Judicial Circuit of Florida, or in the Supreme Court of Florida."

In Flagg v. Bradford, State Treasurer, 181 Mass. 315, 63 N. E. 898, it was held:

"The commonwealth can be impleaded in its own courts only on such terms and in such manner as it chooses to enact."

The cases cited, however, are to be distinguished from the case at bar. The case at bar, as we have heretofore pointed out, does not come within that class of cases con-

templated in Section 22, Article III of our Constitution and, as further herein pointed out, it is not a case, the merits of which can be adjudicated or determined by the Florida Dry Cleaning & Laundry Board but it is a case where the complainant in the court below, the litigating respondents here, aver that their constitutional rights are being invaded in Dade County by the enforcement of orders and regulations prescribed by a State instrumentality which was and is without constitutional authority to make and enforce such orders and rules. Their ground of complaint is not the action taken by the Board in Duval County, the place of its headquarters, but it is the action of the. Board in attempting to enforce those orders and rules in Dade County, Florida, contrary to the provisions of the Constitution of Florida, as is alleged.

In an analogous case the Supreme Court of Washington in the case of State of Washington, plaintiff, v. Superior Court for Walla Walla County, John L. Sharpstein, Judge, respondent, 167 Wash. 334, 9 Pac. (2nd) 70, the Court said:

"In the complaint, plaintiffs' alleged their several ownerships of real property abutting on Preston Avenue in and without the city of Waitsburg; that the grade of this highway had been legally established and their respective properties improved with reference to .the established grade : and that Preston avenue has for some years been a part of the state highway system, and under the control and supervision of the state highway department. After other allegations not material to this inquiry, plaintiffs alleged that the defendants were proceeding to raise the grade of Preston avenue, without legal right and in violation of plaintiff's constitutional rights as abutting owners, to plaintiff's damage, and that no proceedings had been had for the purpose of ascertaining the damage which plaintiffs would

suffer because of changing the grade, plaintiffs prayed for an injunction, restraining the defendants from proceeding with the work, and for general relief in the premises.

"The trial court issued a temporary restraining order, and, after hearing on an order to show cause, continued the provisions thereof in force, and indicated an intention to grant a permanent injunction. The State of Washington thereupon filed in this court its petition for a writ of prohibition, restraining the Superior Court for Walla Walla County from proceeding further in that action. In response to an alternative writ, respondent filed herein a demurrer to petitioner's complaint, and also an answer thereto, only questions of law being thereby presented, which raise all questions for decision.

"The state, as petitioner, contends that the action pending before the Superior Court for Walla Walla County is, in fact, an action against the State; and that such an action, under the statute (Rem. 1927, Sup., No. 886), must be brought in the Superior Court for Thurston County. Respondent contends that the action is not against the State, but has been brought against certain of the State's employees, as individuals, and for that reason may properly be maintained in the county in which the real property owned by plaintiffs is situated."

And further in that opinion it was said:

"Our constitutional provision respecting eminent domain is very strict and positive, and somewhat farther reaching than other similar constitutional provisions we have examined. It certainly would be evaded if, under the legislation permitting persons to sue the State only in Thurston County, in all cases where the State takes or damages private property without first purchasing or condemning and paying into court the damages therefor, landowners from

remote corners of this large state were forced to sue in Thurston County for their constitutional damages.

"In all such cases, the state goes to the county in which the land is situated to purchase by negotiations or to condemn, if necessary; and it cannot justly be said that these state highway officers, although acting in good faith and innocently, can damage the property of plaintiffs in the original action and compel them to sue in Thurston County to recover their damages, or to enjoin the state officers from proceeding without legally acquiring the right by contract or condemnation. The State, like any other appropriator of private property, must go to the courts having local jurisdiction of the property. Condemnation actions are strictly local in their character.

"A number of cases cited and relied upon by petitioner from other states and the United States Supreme Court are easily distinguishable from the case before us, because they involve different constitutional and statutory questions, and while controlling in such cases and instructive in their decisions, are of no controlling force and useless to discuss in this case.

"Plaintiffs in the original action in this case have constitutional rights which they are entitled to enforce in their local forum and not elsewhere, and the State has no right to violate them if it ultimately be found that their lands are damaged without first purchasing or acquiring the right to damage, by condemnation."

Whether the complainants in the court below, the respondents here, are correct in their contention that their constitutional rights are being violated by the enforcement of orders and rules of the Florida Dry Cleaning & Laundry Board is not before us for determination. Whether they are right or wrong, they do have the right to have that question judicially determined and to institute suit for that

purpose in the *jurisdiction* where the *alleged wrong is al-. leged to be operating.*

We do not mean to hold that the legislative Act, *supra,* is ineffectual to require all suits to review the orders, rules and regulations of a State Dry Cleaning and Laundry Board which may be promulgated in the exercise of the. constitutional authority of the statute may be instituted in a county other than that in which the headquarters of the Board are established. But, what we mean to hold is that the instant case does not reflect a suit of that sort and that this sort of a suit is not within the purview of, nor a suit of that kind and character which the statute purports to require to be instituted in Duval County. It is true that the bill of complaint filed in Dade County contains allegations and prayers by which it may be said to have attempted to invoke the intervention of the court so as to affect the functioning of the Board beyond the territorial jurisdiction of that court and in relation to others not parties complainant. In this respect the Bill seeks relief which, if available at all, is too general to be awarded in the pending proceeding which may be effectual only to protect complainants from the operation of unconstitutional acts of the Board which may be shown to have been *committed in that jurisdiction.*

Lastly, it is contended that in the case of Miami Laundry Co., *et al.,* v. Florida Dry Cleaning & Laundry Board, opinion filed July 27, 1938, and reported 183 Sou. 759, the Court adjudicated the provisions of Chapter 17894, *supra,* now under attack in the Dade County Circuit Court to be con-. stitutional and valid and that the restraining order entered in the case involved here constitutes a holding by that court contrary to the holding of the Supreme Court and is, therefore, an unwarranted exercise of judicial authority and in excess of the Circuit Court's jurisdiction. In support of

this contention the following cases are cited: State, *ex rel.* American Fire & Casualty Co., *et al.,* v. Barns, Circuit Judge, *et al.,* 121 Fla. 341, 163 Sou. 715; State, *ex rel.* Reynolds, Comptroller, *et al.,* v. White, Judge, *et al.,* 40 Fla. 297, 24 So. 160; State, *ex rel.* Gray, v. Davis, Circuit Judge, *et al.,* 83 Fla. 422, 91 So. 267; State, *ex rel.* Jewett, *et al.,* v. Robles, Judge, 75 Fla. 790, 78 So. 981; State, *ex rel.* Patterson, v. Lee, 121 Fla. 541, 164 So. 188 and State, *ex rel.* Burr, *et al.,* v. Whitney, 66 Fla. 24, 63 So. 299. We cannot say that the authorities cited go far enough to sustain the Relator's contention. The two suits are not between the identical parties. In the instant case the Circuit Court of Dade County has jurisdiction and may acquire jurisdiction of the parties and of the subject matter insofar as it operates in Dade County and, therefore, has the power to proceed to adjudicate such proper issues as may be presented. In the disposition of the questions presented it is to be presumed that the Circuit Court will follow the enunciations of the Supreme Court insofar as such enunciations adjudciate like questions of law and questions of constitutional validity of statutes, leaving it to the Supreme Court to adhere to or overrule its former decisions. This must be so; otherwise, there would be no end to litigation. See State, *ex rel.* Patterson, v. Lee, *supra.* But the *power* lies in the Circuit Court to disregard the rule of *stare decisis,* though it has not the power to disregard the rule of *res adjudicata.*

For the reasons stated, rule *nisi* in prohibition should be discharged and the cause be dismissed.

It is so ordered.

TERRELL, C. J., and WHITFIELD and BROWN, J. J., concur.