113 So.2d 406 (1959)
Ancelmo MORENO, Appellant,
v.
A.D. ALDRICH, as Director of the Game and Fresh Water Fish Commission of the State of Florida, Appellee.
No. 841.
District Court of Appeal of Florida. Second District.
June 19, 1959.
*407 Farish & Farish, West Palm Beach, for appellant.
Jones, Adams, Paine & Foster, West Palm Beach, for appellee.
KANNER, Chief Judge.
As a result of a motor vehicular accident, appellant, Ancelmo Moreno, suffered personal injuries for which the appellee, Game and Fresh Water Fish Commission, was held liable; and a jury verdict in the sum of $22,500 was returned for appellant. The trial court applied section 455.06, Florida Statutes, F.S.A., and entered final judgment of recovery for the appellant in the amount of $10,000 plus costs.
Although appellee did not invoke governmental immunity until after the verdict was rendered, it did so before entry of final judgment, as limited by the waiver afforded under section 455.06. Motion was filed by appellee to make operative this statutory section for limiting its liability to the recovery ceiling for bodily damage in the sum of $10,000 as specified by its insurance policy.
There are two basic questions which emerge from this appeal, first, whether the trial court should have reduced the jury verdict which was in excess of the insurance policy limits to the lesser amount of the policy maximum pursuant to section 455.06, and, second, whether a motion to reduce the verdict in excess of such policy limits was timely made after the rendition of the verdict and prior to the entry of final judgment.
The applicable parts of section 455.06, Florida Statutes, F.S.A., read:
"(1) The public officers in charge or governing bodies as the case may be, of every county, county board of public instruction, governmental unit, department, board or bureau of the state, including tax or other districts, political subdivisions and public and quasi-public corporations, other than incorporated cities and towns, of the several counties and the state, all hereinafter referred to as political subdivisions, which political subdivisions in the performance of their necessary functions own or lease and operate motor vehicles upon the public highways or streets of the cities and towns of the state, or own or lease and operate aircraft, are hereby authorized, in their discretion, to secure and provide for such respective political subdivisions insurance to cover liability for damages on account of bodily injury, *408 or death resulting therefrom, to any person, or to cover liability for damage to the property of any person, or both, arising from and in connection with the operation of any such motor vehicles or aircraft;
* * * * * *
"(2) In consideration of the premium at which such insurance may be written, it shall be a part of any insurance contract providing said coverage that the insurer shall not be entitled to the benefit of the defense of governmental immunity of any such political subdivisions of the state in any suit instituted against any such political subdivision as herein provided, or in any suit brought against the insurer to enforce collection under such an insurance contract; and that the immunity of said political subdivision against any liability described in subsection (1) hereof as to which such insurance coverage has been provided, and suit in connection therewith, are waived to the extent and only to the extent of such insurance coverage; provided, however, no attempt shall be made in the trial of any action against a political subdivision to suggest the existence of any insurance which covers the whole or in part any judgment or award which may be rendered in favor of the plaintiff, and if a verdict rendered by the jury exceeds the limit of the applicable insurance, the court shall reduce the amount of said judgment or award to a sum equal to the applicable limit set forth in the policy."
Obviously, the purpose of the statute is to authorize the securing of liability coverage by the designated political subdivisions for damages arising from and in connection with operation of motor vehicles and aircraft in performance of necessary functions, and within the periphery of the statute's operation is granted a waiver of the doctrine of immunity limited to the extent of the insurance carried.
We may here observe that, historically, the need for conservation and regulation of Florida's game and fish has long been recognized as a statewide problem. The legislature, when it proposed the constitutional amendment, now article four, section thirty, F.S.A., and the people, when they adopted it in the 1942 general election, gave impetus to this conviction through creation of a commission which became a new administrative department of the state government. The amendment provides that the "management, restoration, conservation and regulation of the birds, game, fur bearing animals, and fresh water fish of the State of Florida," shall be vested in a commission known as the Game and Fresh Water Fish Commission. The commission was thus under the constitutional provision and through enabling legislation "equipped with powers adequate to the purpose for which it was to be, and was, created." See Sylvester v. Tindall, 1944, 154 Fla. 663, 18 So.2d 892, 898. Hence the Game and Fresh Water Fish Commission is a state agency, and this is not disputed by the appellant.
Under appellant's first point, he urges two propositions, (1) that the decision of the Florida Supreme Court in the case of Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 133, 60 A.L.R.2d 1193, has wholly repudiated the doctrine of governmental immunity as to tort liability, and (2) that since the doctrine of governmental immunity has been abolished, section 455.06 cannot validly be applied to preserve it in part.
As to the first proposition, appellant relies stoutly upon Hargrove v. Town of Cocoa Beach, because the Florida Supreme Court in that case receded from previous decisions which had held municipalities immune from liability for tortious acts of their police officers. His position is that the rationale of the Hargrove case has the elastic effect of reaching beyond municipalities in its recession from the immunity doctrine so as to apply also to state *409 agencies. The pronouncement of the Florida Supreme Court dealt only with the immunity doctrine affecting a municipality. Thus the Supreme Court stated:
"We therefore now recede from our prior decisions which hold that a municipal corporation is immune from liability for the torts of police officers. Affirmatively we hold that a municipal corporation may be held liable for the torts of police officers under the doctrine of respondeat superior. * * *
"Subject to the limitations above announced, we here merely hold that when an individual suffers a direct, personal injury proximately caused by the negligence of a municipal employee while acting within the scope of his employment, the injured individual is entitled to redress for the wrong done."
As to the second proposition, the appellant urges that since according to his interpretation the doctrine of governmental immunity has been repudiated, section 455.06 cannot be validly utilized to provide partial immunity. No constitutional question as to section 455.06 was raised in the trial court, nor is there any premise therefor in the assignments of error. The case of Suwannee County Hospital Corp. v. Golden, Fla. 1952, 56 So.2d 911, cited by appellant as authority for his contention, relates to a county hospital. In that case the court determined that the hospital, at least as to those who were paying patients, was engaged in a proprietary rather than a governmental function and that the statute through which attempt was made to immunize the hospital from tort liability as to persons of that classification was unconstitutional. As to paying patients, the court explained, the hospital is the same as if it were privately maintained and should be equally responsible for torts. That case has no application to the instant question.
By a long succession of cases our Supreme Court has declared under the immunity doctrine that a state cannot be sued for tort in the absence of statutory consent. This doctrine of immunity operates also as to an agency which serves as a state instrumentality. Bloxham v. Florida Central & P.R. Co., 1895, 35 Fla. 625, 17 So. 902; Hampton v. State Board of Education, 1925, 90 Fla. 88, 105 So. 323, 42 A.L.R. 1456; State ex rel. Davis v. Love, 1930, 99 Fla. 333, 126 So. 374; State ex rel. Florida Dry Cleaning and Laundry Board v. Atkinson, 1938, 136 Fla. 528, 188 So. 834; Spangler v. Florida State Turnpike Authority, Fla. 1958, 106 So.2d 421. Also see Florida State Turnpike Authority v. Anhoco Corp., Fla.App. 1958, 107 So.2d 51. There has been consistent adherence to the immunity doctrine as regards the state and its instrumentalities, both before and after the Hargrove decision. We therefore conclude that the doctrine as to tort liability rests unimpaired in its applicability to the state or its agencies unless otherwise statutorily authorized.
Under his second point appellant asserts that the application of section 455.06 is not here permissible, since the defense of immunity thereunder was not interposed until after the jury had rendered the verdict adverse to appellee. This delay, he says, estops appellee from invoking the immunity benefit of the statute.
Appellant advances the case of Rose v. Peters, Fla. 1955, 82 So.2d 585, to bolster this argument. In that case the Supreme Court held as to an objection based on proffer of an insurance policy between Dade County and a casualty company that the proffered evidence was correctly excluded under the doctrine of Carls Markets, Inc. v. Meyer, Fla. 1953, 69 So.2d 789. The Carls Markets case, however, does not concern the immunity doctrine but relates to the doctrine precluding injection of the existence of insurance coverage in a trial. The court in the Rose v. Peters opinion added that the defendant did not plead governmental immunity and that there was no attempt to secure reduction of the ad *410 damnum clause to the amount of the insurance coverage.
In Rose v. Peters the Supreme Court in its opinion did not purport to construe section 455.06, and nowhere in it is this section of the statute mentioned. We have obtained the appellate court record in that case and it reveals that the statute under consideration, a population statute designated as Chapter 27031, General Laws of Florida, 1951, was an act relating to Dade County rather than to section 455.06. That statute and the one here under consideration differ very materially. The former relates to counties having a population of more than 325,000 and does not embrace other political subdivisions of the state. It provides that liability insurance contracts may within the discretion of the county commission be made by a county coming within the population bracket, and in addition to this or in lieu of it provides a self insurance program. A most important distinction rests within the total lack of any procedure in the population act whereby the matter of insurance coverage may be considered by the trial court. Additionally, there was no provision for reduction of a verdict in excess of the applicable insurance coverage.
From the language of section 455.06 as hereinbefore quoted, we remark that "no attempt shall be made in the trial of any action against a political subdivision to suggest the existence of any insurance which covers the whole or in part any judgment or award which may be rendered in favor of the plaintiff" and that "if a verdict rendered by the jury exceeds the limit of the applicable insurance, the court shall reduce the amount of said judgment or award to a sum equal to the applicable limit set forth in the policy." The Rose v. Peters case is not determinative here.
The interposition through formal motion by the defendant below, the appellee here, for reduction before entry of final judgment as was done in this case puts the existence of an insurance policy and its coverage limit into issue after the trial, yet before final adjudication of the case, upon which interposition the adversary can be heard. It does not appear from the trial record that appellant disputes the existence of an insurance policy with the indicated $10,000 limit.
We accordingly hold that appellee's motion was timely filed and was properly considered and granted by the court.
Affirmed.
SHANNON, J., and LUCKIE, CHARLES A., Associate Judge, concur.