116 So.2d 762 (1959)
BOARD OF COMMISSIONERS OF STATE INSTITUTIONS, a constitutional governmental Agency of the State of Florida, Petitioner,
v.
TALLAHASSEE BANK & TRUST COMPANY, As Administrator Cum Testamento Annexo, Estate of John G. Riley, Deceased, Winifred Lively Wesson, Caroline Lively Carraway, and Emily G. Lively, Trustees of the Church of God, a Florida Corporation, and Hyman Myers, Respondents.
Supreme Court of Florida.
November 13, 1959.
Rehearing Denied December 15, 1959.
*763 Richard W. Ervin, Atty. Gen., Ralph M. McLane and H. Rex Owen, Asst. Attys. Gen., for petitioner.
Julius F. Parker, Caldwell, Parker, Foster, Madigan, Oven & Moriarty, Tallahassee, for Tallahassee Bank & Trust Co., as administrator cum testamento annexo, Estate of John G. Riley, deceased, Winifred Lively Wesson, Caroline Lively Carraway and Emily G. Lively.
Leo L. Foster, Tallahassee, for Hyman Myers.
James C. Truett, of Truett & Watkins, Tallahassee, for trustees of Church of God.
James Messer, Jr., Tallahassee, for City of Tallahassee.
HOBSON, Justice.
The Board of Commissioners of State Institutions, a constitutional governmental agency of the State of Florida, has filed a petition for certiorari directed to the opinion and decision of the District Court of Appeal of the First District in the case of Board of Commissioners of State Institutions v. Tallahassee Bank and Trust Company, 108 So.2d 74.
It is contended that said opinion is in direct conflict with this court's opinion in the case of City of Miami Beach v. Hogan, Fla. 1953, 63 So.2d 493, which opinion was the predicate for our judgment in the companion case of City of Miami Beach v. Elsalto Real Estate, Inc., Fla. 1953, 63 So.2d 495. We noted apparent conflict and issued the writ of certiorari.
The controlling point of law and the only one actually decided in the Hogan[1] case was the applicability of the "fairly debatable" rule.[2] This rule became a part of the law of Florida by virtue of our opinion in the case of City of Miami Beach v. *764 Ocean & Inland Company, 147 Fla. 480, 3 So.2d 364. Said rule, according to the majority view in the Hogan case, was departed from in City of Miami Beach v. First Trust Company, Fla., 45 So.2d 681. In the case of State ex rel. Office Realty Company v. Ehinger, Fla., 46 So.2d 601, we reaffirmed the doctrine that upon the question of rezoning the court will not substitute its judgment for that of the governing body of a city if the question whether a change in zoning should be made is "fairly debatable".
In the Hogan case the condemnee attempted to secure an injunction in the equity court restraining the condemnation proceedings against her property until she might have time in the same equity cause within which to attack the zoning ordinance then in existence restricting the use of her property to residential purposes only. She contended that such ordinance was arbitrary, unreasonable, and placed an undue restriction upon the use of her land. This court merely held that under the facts the property owner would not be permitted to enjoin the condemnation suit for such purpose because the question whether a change in zoning should be made was "fairly debatable" and, therefore, the court would not substitute its judgment for that of the city officials.
In the present case the condemnees sought from the trial court permission in the condemnation suit to present, by way of cross-claim, evidence of the alleged fact that their properties were adaptable to use as business properties in a classification known as Business-A Zone, and that a change in the zoning ordinance should have been made previous to the institution of the condemnation proceedings or would, in all reasonable probability, have to be made by the City Fathers in the proper performance of their official duty within the foreseeable future. This request was granted.
No contention is made herein that the learned trial judge failed to observe the rules of law in this state before applying the so-called Texas rule.[3] In all probability such contention is not asserted because implicit in the order of the trial judge entered after the pre-trial hearing, are findings that it would have been futile for the property owners to have attempted to exhaust their administrative remedies[4] and that the question whether their properties should have been rezoned was not "fairly debatable". Therein lies the real distinction between this suit and the Hogan case.
This case is not here on direct appeal. We have no right to review the findings of fact of the trial judge and possibly change such findings in order to create or establish the conflict alleged in the petition for certiorari filed in this court.[5] However, since the end result sought unsuccessfully by the condemnee in the Hogan case is the same end result obtained by the property owners in this condemnation suit, we would be justified in decreeing a conflict to exist if all of the findings on the material facts in the present action were the same, or substantially the same, as those set forth by this court in the Hogan opinion. Such is not the case.
*765 The land owned by H. Gertrude Hogan was and is ocean front property. With this unquestioned fact as a premise this court said, and we quote:
"In all heavily populated municipalities the police power should be exercised by municipal officials to afford all of the people light, air, an opportunity for recreation, and, in the case of Miami Beach, sufficient park space or other space at public expense to enable all of the people a view of the ocean, the enjoyment of sunshine, fresh air and the actual use of the ocean for the general purposes recognized everywhere. The people of a municipality have a particular right to use the ocean and the land lying between mesne highwater mark and mesne lowwater mark for the purposes universally recognized.
"If all of the ocean front of Miami Beach was devoted to hotel purposes, then the citizens generally would have no access to the ocean unless they should become guests at one of the hotels."[6]
The foregoing pronouncements constituted the basis for our determination that the question whether a change in zoning should be made was "fairly debatable". This conclusion was reached with full knowledge, and in spite, of an allegation, which, in the state of the pleadings, had to be accepted as true, that the City of Miami Beach had failed and refused to rezone the subject property in order to secure it for less money, when contemplated condemnation should take place, then the city would have to pay if said property were rezoned, as it should be, to allow it to be utilized for multiple family apartments or hotels. Such allegation amounted to an attack upon the motive of the city council in retaining the restrictive zoning ordinance, but was properly held insufficient to overcome the effect of the peculiar facts of the Hogan case, which caused the question of the propriety of rezoning to be "fairly debatable".
There are no proven facts, or any which might be said to be of common knowledge, concerning the character or location of the property involved in this condemnation suit which cast upon the officials of the City of Tallahassee the duty of acquiring said property in order to afford to its inhabitants "a view" of any body of water, "the enjoyment of sunshine, fresh air and the actual use" of any lake, river, stream, ocean or gulf "for the general purposes recognized everywhere" or for any other such public purpose.
The record herein does disclose the conclusively established fact that there had existed for a number of years an arrangement or agreement between the City of Tallahassee and the State, through certain of its agencies, to keep the subject properties zoned for residential use only until the State might, under its power of eminent domain, take them over to carry out its plan for enlargement of the "Capitol Center".
There is no doubt that a "Capitol Center" such as has been envisaged for many years, and which has been slowly but surely developing, is a worthy project. However, it is not a public necessity insofar as the inherent rights of the citizens of Tallahassee are concerned, but is more in the nature of a convenience and one by no means exclusive to the residents of Tallahassee.
There are no facts in this case which would justify any appellate tribunal in overturning the necessarily implied finding of fact by the trial judge, upon uncontroverted testimony given at the pre-trial hearing, that the question of a change in zoning was not "fairly debatable". Consequently there is no conflict between the subject *766 decision and our decision in the Hogan case.
The advisability of adopting the so-called Texas rule which is set forth in the case of City of Austin v. Cannizzo, 1954, 153 Tex. 324, 267 S.W.2d 808, has never been presented to the Supreme Court of Florida. The Court of Appeal of the First District is, with certain exceptions, a court of final appellate jurisdiction. Under our Constitution this court does not have plenary power to review the decisions of the District Courts of Appeal. Since we can find no basis for taking jurisdiction in this case, we have no authority to review the District Court's decision to consider and determine the assignments of error filed herein.
It must be borne in mind at all times that the purpose of amended Article V of the Florida Constitution, F.S.A., insofar as it need now be considered, was to give to this court jurisdiction of any case decided by one of our three District Courts of Appeal wherein such decision might conflict "on the same point of law" with a prior decision or decisions of the Supreme Court of Florida or one or both of the other District Courts of Appeal, to the end that there might be uniformity in the case law of this state. We have decided that the decision in the instant suit is not, as alleged, in conflict "on the same point of law" with any prior decision of this court and, consequently no confusion has been created in the case law of Florida.
Although we have determined that there is no conflict "on the same point of law" between the Hogan case and the instant suit, we deem it appropriate to observe that we find no fault with the First District Court of Appeal in adopting the so-called Texas rule.[7] We are constrained to make this observation because of the fact that the "end result" in the former case is diametrically opposed to the "end result" in this condemnation suit. It should be remembered, however, that under the Texas rule the question whether there is a reasonable probability that the ordinance may be changed or an exception made in the foreseeable future, is ordinarily for the jury.
The writ of certiorari heretofore issued in this cause must be, and it is hereby, quashed.
It is so ordered.
THOMAS, C.J., and TERRELL and DREW, JJ., concur.
ROBERTS, J., concurs in judgment with opinion.
ROBERTS, Justice (concurring specially).
Because of the constitutional limitation circumscribing as it does the power of this court to review decisions of the District Courts of Appeal, I have no alternative but to concur in the judgment quashing the writ of certiorari. It is unfortunate that such limitations prevent our giving full consideration to the merits of the questions presented. The pronouncement by the District Court of Appeal in this case is an innovation in the condemnation law of this state, and it would seem much more appropriate for such to be reviewed, considered and decided by the state's highest court.
NOTES
[1] For the sake of brevity we shall refer hereinafter only to the Hogan case, but what we have to say will apply equally to the Elsalto case.
[2] The "fairly debatable" doctrine, simply stated, is that when the matter of rezoning is presented, the court will not substitute its judgment for that of the zoning body if the question whether there should be a change in the zoning ordinance is "fairly debatable."
[3] The Texas rule, which is in line with the modern trend of authority, appears to be that in arriving at market value consideration may be given to all of the uses to which the property of the condemnee "is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future". City of Austin v. Cannizzo, 1954, 153 Tex. 324, 267 S.W.2d 808, 815. (Italics supplied.)
[4] State ex rel. Florida Dry Cleaning and Laundry Board v. Atkinson, 1938, 136 Fla. 528, 188 So. 834.
[5] Florida Power & Light Co. v. Bell, Fla. 1959, 113 So.2d 697.
[6] See 63 So.2d 493, at page 495.
[7] "That even though an existing municipal zoning ordinance may prohibit the use of property for stated purposes at the time of condemnation, nevertheless, if there is a reasonable probability that the ordinance may be changed or an exception made in the foreseeable future, then the value for such use as may be included in the amendment or exception may be considered." [108 So.2d 83.] (Italics supplied.)