363 So.2d 851 (1978)
BILTMORE CONSTRUCTION COMPANY, Petitioner,
v.
FLORIDA DEPARTMENT OF GENERAL SERVICES, Respondent.
No. EE-437.
District Court of Appeal of Florida, First District.
November 1, 1978.
*852 Edgar M. Moore of Smith & Moore, Tallahassee, and Dennis P. Thompson of Richards, Nodine, Gilkey, Fite, Meyer & Thompson, Clearwater, for petitioner.
John A. Barley, Tallahassee, for respondent.
McCORD, Chief Judge.
Petitioner, Biltmore Construction Company, seeks review of an order of respondent, Department of General Services, which requires petitioner to specifically perform a contract entered into between petitioner and the predecessor of respondent for the construction of nine cottages in Gilchrist County. The administrative proceeding began with a claim of petitioner for $9,085.16 retained by respondent from the total contract price of $3,272,000. A hearing examiner was appointed to hear the claim, and the hearing began on October 8, 1974. The Administrative Procedure Act enacted by Chapter 74-310, Laws of Florida (now Chapter 120, Florida Statutes, 1977) is not applicable to this proceeding. § 120.72(2)(a) of that statute provides as follows:
"All administrative adjudicative proceedings conducted pursuant to any provision of the Florida Statutes which were begun prior to January 1, 1975, shall be continued to a conclusion, including judicial review, under the provisions of the Florida Statutes, 1973, except that administrative adjudicatory proceedings which have not progressed to the stage of a hearing may, with the consent of all parties and the agency conducting the proceeding, be conducted in accordance with the provisions of this act as nearly as is feasible." (Emphasis supplied.)
Thus, neither the administrative adjudicative proceedings nor review thereof provided in said act are applicable to this proceeding. Also, since the petition for review was filed in this Court prior to March 1, 1978, the Florida Rules of Appellate Procedure, which then became effective, are not applicable to this review. We, therefore, treat the petition for review as a petition for writ of certiorari under Fla.R.App.P. 4.5 c of the 1962 Appellate Rules.
The controversy between petitioner and respondent over petitioner's construction of the aforesaid cottages related to roof leaks which caused considerable damage to the buildings. The construction contract of the parties provided that, with certain exceptions not applicable here, all disputes arising under the contract "shall be decided by the Architect, subject to written appeal within 30 days to the State Budget Commission, State of Florida, whose decision shall be final and conclusive upon the parties thereto as to such disputes." The contract further provides:
"The determination of all such matters in the manner provided in this Article shall be a condition precedent to any right to legal action of either party against the other or any matter of dispute arising under this contract."
At the conclusion of the hearing, the hearing examiner entered his recommended order in which he made findings of fact and conclusions of law. His detailed findings and conclusions are summed up as follows:
"Based upon a preponderance of the evidence, it would appear that:
a. Improper nails were suggested and used by the Contractor by and through its original subcontractor with notice to the Architect who did not officially respond and in any way object to the 1 3/4" long barbed roofing nails. In fact, based upon the testimony of Mr. Huff, Mr. Batts and Mr. Harnley, supra, it would appear that the Architect did acquiesce to the 1 3/4" long barbed roofing nail which is not the correct nail as called for in the manufacturer's specifications.
b. The initial shingles supplied by the Philip Carey Co. as well as the replacement shingles were of substandard quality as both were the subject of blistering.

*853 c. The workmanship with respect to both original shingles and replacement shingles was improperly performed.
d. Work on roofs including the replacement of defective shingles was done by more than one roofing subcontractor. During the latter part of this problem, it becomes almost impossible from a reading of the record to determine who had the responsibility and was in charge of the supervision of the corrective roof work. Under normal circumstances, it would appear that the contractor would have primary supervisory control and the Architect would have ultimate control over the review process to determine whether substantial completion has been accomplished in accordance with the project specifications. Apparently, neither of these important entities properly and completely fulfilled their responsibilities in the instant case.
e. In short, we have the unfolding of a story where all of the major characters have to some extent contributed to a tragic conclusion  an inability to construct a facility for the State that won't leak when it rains. This sad conclusion becomes even more tragic when confronted with a record which does not satisfactorily address itself to the question of why the retainage sum under the contract was reduced to something just over $9,000 when the various problems were nowhere near resolution. It is not clear whether the State, on its own initiative and review, instructed the Architect to reduce the retainage of monies held, or whether the State acted upon representatives of their Architect to authorize reduction of the amount of money held as retainage to insure proper completion of the project."
The hearing examiner concluded his recommended order by recommending that the claim of petitioner for the retained sum of $9,085.16 be denied. Thereafter, the Governor and Cabinet, sitting as the Board heading the State of Florida, Department of General Services, entered its final order modifying the findings and conclusions of the hearing examiner as follows:
"Although it has been previously stated that the fault in this progression of errors cannot be laid to rest with any one particular participant, there is more than ample competent and substantial evidence in the record to support a finding that the Contractor was grossly deficient in his supervision and management of the initial workmanship and replacement workmanship of the roofs in question, which included the presence of a variety of improper nails used in the roofing process. The record is also supported by a preponderance of the evidence that the Contractor's inability to meet his contractual obligations as a matter of law exceeds the amount of retainage which is the subject of the instant claim."
The final order then ordered:
"Therefore, based upon the foregoing, it is Considered, Ordered and Adjudged that the Contractor, Biltmore Construction Company, Inc., be and the same is hereby directed to provide such labor, materials and supervisory services as are necessary to remedy the damaged conditions of the nine cottage roofs without further delay and without further cost to the State of Florida; and
It is further Considered, Ordered and Adjudged that upon the Project Architect, Watson and Company, certifying that said remedial work has been finally completed and that said roofs have been constructed in accordance with the requirements of the terms and conditions in the Contract Documents for the subject project, the State of Florida Department of General Services be and the same is hereby directed to then issue or cause to be issued final payment to the Contractor in the sum of $9,085.16, the amount presently held in retainage; and
It is further Considered, Ordered and Adjudged that the Contractor be and the same is hereby directed to make prompt payment to the department in the amount of $5,091.97 for the cost of these proceedings and the Department's cost in defending against the Contractor's appeal from the Architect's determination."
The final order departs from the essential requirements of law. It orders specific performance *854 of contract which only a court in the exercise of its equitable powers may decree. See Chaney v. Brown, 158 Fla. 489, 29 So.2d 209 (1947), and H. Kooman, Florida Chancery Pleading and Practice § 374 (1939). While an administrative agency may exercise quasi-judicial power when authorized by statute, it may not exercise power which is basically and fundamentally judicial such as the grant of an equitable remedy. Such action violates Article II § 3 of the Florida Constitution which provides:
"Branches of Government.  The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."
See Canney v. Board of Pub. Instruction of Alachua Cty., 278 So.2d 260 (Fla. 1973).
We have considered the following question which was raised by the Court on its own motion and upon which counsel for both parties filed additional briefs:
Whether or not the enforcement of the contract pursuant to the enforcement provisions thereof in conjunction with the Administrative Procedure Act (Chapter 120, Florida Statutes) is a denial of due process to appellant in that a party to the contract is the tribunal which adjudicates its own contract?
We find no violation of due process by a state agency affording a hearing to one with whom it has contracted upon such person's claim under the contract. Compare S & E Contractors v. United States, 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972).
Since this action is not governed by the 1974 Administrative Procedure Act and since there is no other applicable statute waiving immunity, petitioner is barred by the doctrine of sovereign immunity from bringing an action in court on the contract. See State ex rel. Florida Dry Cleaning and Laundry Board v. Atkinson, 136 Fla. 528, 188 So. 834 (1938); Hampton v. State Bd. of Education, 90 Fla. 88, 105 So. 323 (1925), and cases cited. Circuit Court, etc. v. Dept. of Nat. Resources, 339 So.2d 1113 (Fla. 1976), impliedly receding from Gay v. Southern Builders, Inc., 66 So.2d 499 (Fla. 1953); State ex rel. Div. of Admin. v. Oliff, 350 So.2d 484 (Fla. 1 DCA 1977).[1] Petitioner must either accept the refusal of respondent to pay to it the retainage under the contract or seek the remedy of a claim bill in the legislature. There is, however, nothing to bar respondent from bringing an action in the appropriate trial court for damages or for specific performance of the contract, but we here make no ruling as to whether or not such relief should be granted.
Writ of certiorari is granted, and the final order of the State of Florida, Department of General Services, dated January 5, 1977, is quashed.
SMITH and MELVIN, JJ., concur.
NOTES
[1] Compare, however, Graham Contracting, Inc. v. Department of General Services, 363 So.2d 810 (Fla. 1 DCA 1978), Case Nos. KK-284 and KK-285, opinion filed October 31, 1978, in which this Court held that to the extent of the remedies provided under the 1974 Administrative Procedure Act, the legislature has waived sovereign immunity.